KNICKERBOCKER LIFE INS. CO. (THOMPSON v.). See Case No. 13,964.

KNICKERBOCKER LIFE INS. CO. (TREFZ v.). See Case No. 14,166.

---

## Case No. 7,880.

### In re KNIGHT.

[2 Biss. 518; 8 N. B. R. 436; 18 Int. Rev. Rec. 166; 30 Leg. Int. 338; 21 Pittsb. Leg. J. 43.] [1]

Circuit Court, E. D. Wisconsin. April Term, 1871.

PARTNERSHIP—INDIVIDUAL DEBTS — DISTRIBUTION —BANKRUPT LAWS—STATE DECISIONS ON INSOLVENT LAWS.

1. The English rule in bankruptcy that where there are both partnership and individual debts, but no partnership assets and no solvent partner, the debts of the firm and of the members can be proved, and the estate is to be distributed

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 18 Int. Rev. Rec. 166, contains only a partial report.]

pari passu among the creditors, approved and adopted.
 [Cited in Re Dunham, Case No. 4,144; Re Rice, Id. 11,750; Re Long, Id. 8,476; Re McEwen, Id. 8,783; Re Hamilton, 1 Fed. 812.]
 [Cited in Curtis v. Woodward, 58 Wis. 507, 17 N. W. 332.]

2. This rule applies, even though the total assets consists of property sold by the individual creditors of the bankrupt.

3. Various Massachusetts cases examined and disapproved.

4. The federal courts, in construing the bankrupt law [of 1867 (14 Stat. 517)], are not bound by the decisions of a state court on a similar insolvent law.

Appeal from an order of the district court denying a petition of Jonathan Richards, and others, creditors of C. Peter Knight, bankrupt, to be paid from the individual assets of the bankrupt, in preference to the creditors of the firm, there being no firm assets. The bankrupt, Knight, and one Hilke, were engaged in business in March, 1869, at Watertown, Wisconsin, as partners, and filed their petition in bankruptcy. Their assets were about $8,000 and their debts about $9,000. In May, 1869, Knight effected a compromise with the creditors of the firm at fifty cents on a dollar. Twenty-seven and a half per cent. of this sum was secured by the indorsement of two persons, to whom Knight and Hilke, with the assent of the creditors of the firm, executed a chattel mortgage on the firm property. This property was sold from time to time and the proceeds paid over to the mortgagee. These mortgaged goods were kept distinct from some belonging to Knight, which he purchased afterwards. Hilke was insolvent, and there was no joint property of the firm. Afterwards Knight did business on his own account, and incurred the indebtedness to the petitioners for goods purchased, and in November, 1869, they, as such creditors of Knight, filed a petition in bankruptcy against him, and he was adjudged a bankrupt. There was about $1,500 in the hands of the assignee of Knight, derived wholly from the property owned by him, while he did business on his own account. Certain creditors of Knight and Hilke who had taken promissory notes of them under the compromise, proved their debts against Knight, the bankrupt. The petitioners claimed the right to be paid in preference to such creditors.

Palmer, Hooker & Pitkin, for creditors, cited Bump, Bankr. p. 188, 189; In re Downing [Case No. 4,044]; In re Melick [Id. 9,399]; In re Jewett [Id. 7,304]; Ex parte Weston, 12 Metc. [Mass.] 1; In re Crockett [Case No. 3,402]; In re Hartough [Id. 6,164]; In re Winkens [Id. 17,875]; In re Hartz [Id. 6,174]; Somerset Potter Works v. Minot, 10 Cush. 592; Catskill Bank v. Hooper, 5 Gray. 574, 583; Howe v. Lawrence, 9 Cush. 553; In re Byrne [Case No. 2,270.]

Carys & Cottrill, for bankrupt.

DRUMMOND, Circuit Judge. There is no controversy about the rule in equity or bankruptcy in England, in such cases as this—perhaps it might be more properly called an exception to the rule—that where there are partnership and individual debts, and there are no partnership assets and no solvent partner, the debts of the firm and of the individual member can be proved, and the estate is to be distributed pari passu among the creditors. It is partly on the ground, that although it is a debt of the firm it is still a debt against each individual member of the firm, for the satisfaction of which the property of each is responsible, and that being the only source to resort to for the payment of the debt of the firm, it should be appropriated as well to pay the debts due from the firm as from the individual members. This being the well established rule upon the subject, the only difficulty arises from some decisions which have been made in Massachusetts under the provisions of their insolvent law, which, it must be said, is substantially the same in this respect as the 36th section of the bankrupt law of the United States.

The decisions have been made in Massachusetts, under the 21st section of chapter 163 of the insolvent law of 1838, which declared that when two or more persons who are partners become insolvent, a warrant is to be issued, upon which the joint stock and property of the company, and the separate estate of each of the partners, shall be taken —with certain exceptions. And then the section states that the assignee shall be chosen by the creditors, and shall keep separate accounts of the joint stock of the company and of the separate estates of each member thereof, and the net proceeds of the joint stock shall be appropriated to pay the creditors of the company, and the net proceeds of the separate estate of each partner shall be appropriated to pay the separate creditors, and if there is a balance of the joint stock after the payment of the joint debts, it shall be divided and appropriated among the separate estates of the parties according to their respective rights and interests therein, and the sum so appropriated shall be applied to the payment of the separate debts. This seems to be the provision of the law of Massachusetts upon the subject of insolvency which is referred to in the case of Howe v. Lawrence, 9 Cush. 553. That was a case where one of the partners had made a bona fide sale for a valuable consideration, of all his interest in the firm property, to the other member of the firm. And there the supreme court of Massachusetts held that the transfer being a valid one, the separate creditors were entitled to be first paid.

On page 559, the court says: "The remaining question presented by the petitioners is as to the right of the joint creditors of the firm to prove their debts against the separate estate, and take dividends thereon pari passu with the separate creditors. This claim is founded upon the recognized exception to the general rule of applying joint estate to the payment of joint debts, and separate estate to the payment of separate debts, which has been established by the English courts in bankruptcy. That exception is, when there is no joint estate and no solvent partner, the joint creditors are allowed to prove and share equally with the separate creditors in the separate estate. It is a sufficient answer to this claim of the petitioners, that the statute of 1838 (chapter 163, § 21), recognizes no such exception to the rule therein prescribed for the distribution of the assets of insolvent debtors. The rule is distinct and peremptory, requiring the net proceeds of the joint stock to be appropriated to pay the creditors of the firm, and the net proceeds of the separate estate of each partner to be appropriated to the payment of the separate creditors."

"If there is no joint estate," the court says further on, "and no surplus of the separate estate after paying the separate debts, the creditors of the partnership can receive no dividend." Now, it must be said that the supreme court of Massachusetts, in this case, considered this 21st section of the law of 1838, as making provision for the case where there is no joint estate, but only the separate estate of one of the members of the firm. And yet it would seem, at first blush, that this statute contemplated the case of a joint and separate estate. It declares that upon the issue of the warrant the joint stock and property of the company and the separate estate of each of the partners shall be taken. Of course if there is no joint property it cannot be taken. If there is no separate property, that cannot be taken. And the whole scope of the section seems to proceed on the hypothesis that distribution is made of joint and separate property.

But I am not prepared to admit the reasoning of the supreme court of Massachusetts on this point. They say in this same opinion: "The rule fixed by the statute may sometimes operate harshly, as all general rules do; but it is definite, clear, and easily applied. The exceptions to it are artificial and refined, leading to nice and subtle distinctions, and sometimes operating with great inequality and injustice." In the case of partnership property turned over to one of the members of the firm even in good faith and for a valuable consideration, and that member of the firm owing a large debt on his individual account, with which the property of the firm and the firm itself has nothing to do, it would seem to be rather hard to take the property which belonged to the firm, and which ought to go to pay the debts of the firm, and distribute it among the creditors of the individual member to whom the property of the firm had been sold. That is not the case before the court, it is true. But that case might occur, and if the rule stated by the supreme court of Massachusetts

is the true one, it certainly would operate with peculiar hardship.

There is a case decided in 10 Cush. 592 (Somerset Potter Works v. Minot) one head note of which is: "It seems, that if there be no joint property, the creditors of the firm can not, under that statute (the statute of 1838), share in the separate property pari passu with the separate creditors." The court, in that case, on page 597, says: "Our statute upon this subject must be our guide. * * * This matter, which, independent of the statute, might have been a subject for controversy, has become part of our written code, and as such, as respects this commonwealth, overrides all questions of expediency or the fitness of things. It takes the subject in its general bearings, looking at it as a whole, and prescribing a uniform rule for all cases. Like all general rules, it may in particular cases work an apparent injustice, or result in inequality as respects the different classes of the creditors. The statute under which these proceedings in insolvency were instituted, and by virtue of which the assignees hold these assets, has declared that in cases where proceedings are thus instituted against a co-partnership, all the estate of the partnership, and all the separate estate of the individual partner, shall pass into the hands of the assignee."

In that case the decision is placed upon the ground that the proceding in insolvency was instituted against the partnership. The language of the statute to which reference has been made, is, "when two or more persons who are partners become insolvent."

Let us now refer to the 36th section of the bankrupt law, which provides that where two or more persons who are partners in trade shall be adjudged bankrupts, either on the petition of such partners, or any one of them, or on the petition of any creditor of the partners, the warrant shall issue. And then the section follows substantially the language of the 21st section of the statute of Massachusetts of 1838. And there would seem to be no mistake as to the phraseology of this provision of the bankrupt law, and the particular circumstances in the mode of distribution pointed out in this section, and that it only applies where "there are two or more persons that are partners in trade, and who have been adjudged bankrupts on the petition of such partners, or any one of them," etc., and where there is separate and joint property. And while we pay all due respect to a decision of the supreme court of Massachusetts on the provision of its insolvent law, which is substantially similar to the section contained in the bankrupt law of 1867, still we are not absolutely bound by it in administering a general system of bankruptcy under an act of congress, and for the whole country.

Now, as I have said, a debt of the firm is a debt against each individual member of the firm, and for which the separate property of each member can be taken. In that sense it is separate as well as joint, and each partner is individually liable. We cannot make any rule, or adopt any exception to a rule, which will not occasionally work hardship, looking at the equities of a particular case. I have supposed a case where the rule, as stated by the supreme court of Massachusetts, would work hardship upon the joint creditors of the firm, if the separate property in the case supposed is given to pay the individual debts of one of the members of the firm. But we have to adopt some rule or exception which, on the whole, is sound, and will promote the greatest equity and justice. And the reason in this case why the petition cannot be sustained, is because, though it may be true that the property of the petitioners went to make up the assets now in the hands of the assignee, when the petitioners sold the property to the bankrupt, their interest therein ceased; and thenceforth they had nothing more to do with the property as such. All that they had to represent their property was a claim or debt against the bankrupt. It is like the ordinary case of a person who is largely indebted, and to whom a very considerable amount of property may be sold while he is insolvent; he may be put into bankruptcy, and the only assets that may go into the hands of the assignee may be this property or its proceeds, which has been recently sold by the creditor—and yet it must necessarily be distributed among all the creditors of the bankrupt, although it came from only one of them. And the reason is, because when he parted with his property he had nothing but a claim or debt against the bankrupt, and the creditors were then all upon an equality in the eye of the law—the man who has an old claim and whose property has been disposed of years before, as well as the man who has a recent claim, and whose property is in the hands of the assignee.

It is upon this principle that we can sustain a rule of this kind. And it is clear that we can adopt no other. This is the principle of the bankrupt law. The 27th section of the bankrupt law says that all creditors whose debts are duly proven and allowed, shall be entitled to share in the bankrupt's property and estate pro rata, without any priority or preference whatever—with certain exceptions. Now, is not this a debt against the bankrupt? These persons have put in their claims, and proved their debts for notes against the bankrupt and Hilke—still it is always a debt against Knight, the bankrupt, for which he is liable, and the fact that it was once a firm debt can make no difference. It is still a debt against the bankrupt. Therefore taking the general scope of the bankrupt law, and interpreting the 36th and 27th sections together, and under the light of the adjudications in equity and in bankruptcy in England, I think we are not bound to follow the decision of the supreme court of Massachusetts—even though it might be considered

as settling the law upon the construction to be placed upon the 21st section of the law of 1838 of that state.

Jewett's Case [Case No. 7,304], which was referred to, was decided upon the ground that there was no joint property to which the joint creditors could apply, and that the only source of payment was the particular fund; and the court held that the partnership creditors were entitled to share pari passu with the individual creditors. Some criticism has been made upon this decision in the case of In re Byrne [Id. 2,-270], and the register in that case seemed to be of the opinion that the rule, as stated by that court, was not the correct rule. But in that case one of the partners had transferred his interest in the partnership effects to his co-partner, and the register held that that was done in contemplation of filing his petition in bankruptcy, and that such transfer was void, and a fraud upon the creditors of the partnership. And in that case it did not appear whether there was any joint estate or not.

In the case of In re Downing [Id. 4,044], the court, in discussing this question, says that the 36th section of the bankrupt law contemplates the case of an attachment or seizure of joint and separate property of the bankrupt—in which opinion I entirely concur, because it is the natural and true construction of the 36th section.

So that, on the whole, admitting that these rules or exceptions occasionally work hardship, yet this rule, I insist, in the language of the supreme court of Massachusetts, is "simple, definite, clear, and easily applied," and that it works no greater hardship, certainly, than the rule adopted by that court. Take the Case of Jewett which has been cited: in that case all the property of Jewett came from the firm; and to hold that, in that case, his individual debts should be paid out of the property which had been received from the firm, and that the firm creditors should have nothing, would certainly have been a case of hardship. The answer to all this is—in one case as well as another —that the law looks upon the property as gone from the creditor when the sale is made, and that in the place of the property stands the mere claim of the creditor— and that the creditors are then upon an equality.

In deciding this case, I do not trench in any degree, or intend to do so, upon the rule which is founded in law, in reason, and in equity, that in the case of a partnership joint property should go to pay the joint debts, and the separate property to pay the separate debts. The decree of the district court will therefore be affirmed.

See Rodgers v. Meranda [7 Ohio St. 179]. That under certain circumstances a creditor may prove against both estates, see Emery v. Canal National Bank [Case No. 4,446]; In re Bradley [Id. 1,772].