## *In re* HAMILTON, Bankrupt.

### *(District Court, D. Kentucky.* April 14, 1880.)

PARTNERSHIP—CONJOINT FIRM—INDIVIDUAL PARTNERS.—There would seem to be no legal difficulty in the way of treating two firms as individual partners in a conjoint firm, if such be the obvious intention of the parties.

SAME—BANKRUPTCY OF MEMBER OF FIRM—CLAIM PROVED BY FIRM IN COMPETITION WITH CREDITORS OF CONJOINT FIRM—COMPROMISE.—One of such firms cannot, in competition with the creditors of the conjoint firm, prove a claim for the part payment of the partnership debts, against a bankrupt member of the other firm, where such creditors had released such partnership from all further obligation, upon the express consideration that the individual liability of the bankrupt for the residue of such partnership debt should not be impaired.

SAME—SAME—UNLAWFUL PREFERENCE—REV. ST. § 5128.—Such contract, made within four months of the filing of the petition in bankruptcy, did not constitute a preference in favor of the partnership creditors under section 5128 of the Revised Statutes.

BANKRUPTCY—DIVIDEND DECLARED UNDER A TRUST—PROOF OF WHOLE CLAIM.—A creditor cannot prove the full amount of his claim against

the estate of a bankrupt, where a dividend has been declared in favor of such creditor, under a trust for the benefit of creditors, prior to the filing of the petition in bankruptcy.

SAME—PROOF OF CLAIM—DECLARATION OF DIVIDEND UNDER TRUST AFTER PROOF OF DEBT.—Nothing less, however, than the payment of a sum of money, or the present right to receive such money before the proof of debt is made, will prevent a creditor from proving for the whole amount of his claim.

SAME—SAME—FRAUDULENT CONVERSION OF FIRM PROPERTY BY BANKRUPT PARTNERS.—If a partner has fraudulently converted property or money of the firm to his own use there would seem to be no reason why proof on behalf of the joint estate should not be allowed in respect of such property against his separate estate and in competition with his separate creditors.

SAME—SAME—WHEN ABSTRACTION OF FUNDS NOT FRAUDULENT.—In order to constitute fraud, however, in such a case, there must be something more than a mere abstraction of the funds without the knowledge of the copartner, particularly if it be done by one having the sole management of the business.

In Bankruptcy.

BROWN, J.   This case arises upon petitions of the assignee to expunge certain proofs of debt made by Swearingen & Biggs, the Bank of Kentucky, and William Hughes, trustee. The material facts of the case are as follows:   On the fifteenth of September, 1875, Swearingen & Biggs, a firm of distillers, composed of George W. Swearingen and Andrew Biggs, entered into a temporary partnership with Anderson, Hamilton & Co., a firm engaged in a general provision business, composed of William B. Hamilton, the bankrupt, W. T. Hamilton and D. M. Anderson, to pack pork together on general account for the season of 1875-6.   The profits and losses of this business were to be divided in the proportion of three-fourths to Anderson, Hamilton & Co., and one-fourth to Swearingen & Biggs.   No firm name was agreed upon, but for convenience it will be designated in this opinion as the conjoint firm.

The money to carry on its operations was to be raised by paper bearing the name of Swearingen & Biggs as drawers, and Anderson, Hamilton & Co. as acceptors.   William B. Hamilton also became an indorser of such paper in his individual character.

The hogs were bought in the name of Anderson, Hamilton & Co., and the product was also sold in their name. A new set of books was opened, and the transactions relating to said business were entered under the name of Anderson, Hamilton & Co. After making this contract, and while the pork packing season was going on, Swearingen & Biggs continued their business as before, at the same store, and Anderson, Hamilton & Co. continued their office at the same place as before, kept up their separate books in the name of Anderson, Hamilton & Co., and borrowed money and did business in that name as before. Neither of these firms had any interest in the business of the other, except the joint interest in the hog product of that season. In the course of their business a large amount of paper was drawn by Swearingen & Biggs upon Anderson, Hamilton & Co., and accepted by them, generally, in favor of Hamilton Bros., who indorsed the paper, which was also indorsed and negotiated by William B. Hamilton. Amongst the paper so negotiated were the bills proven in this case by the bank of Kentucky, amounting to $80,000.

In June, 1876, the conjoint firm was dissolved by reason of great financial embarrassment, and the control of the hog product and the other assets of the joint account was transferred to Swearingen & Biggs. On the twenty-sixth of June an agreement or settlement was made between the conjoint firm and its creditors holding paper drawn, accepted and indorsed as above stated, by which it was agreed that upon the turning over by Swearingen & Biggs to a trustee (William Hughes being afterwards named by the creditors as such trustee) of all the hog product and other assets of Anderson, Hamilton & Co., and paying the creditor $66,000 in 6, 12 and 18 months, with interest, securing the same upon real estate, and by warehouse receipts upon whisky of Swearingen & Biggs, the creditors would obligate themselves not to sue Swearingen & Biggs, and to accept such hog products and the sum of $66,000 in full satisfaction of the liabilities of said Anderson, Hamilton & Co. and Swearingen & Biggs,

and of their accommodation indorsers or acceptors, Hamilton Bros.

Before this agreement was executed William B. Hamilton, the bankrupt, in order to facilitate it, agreed in writing that the proposed settlement with the conjoint firm might be made, without in any manner releasing or affecting his individual liability as indorser on any of the paper held by the creditors, assenting to remain bound as if the settlement had not been made.

Swearingen & Biggs thereupon transferred to Hughes, as trustee for the creditors, all the assets of the conjoint firm, and paid them the $66,000.

Subsequent to the making of this agreement William B. Hamilton filed his petition in bankruptcy, and was duly adjudicated a bankrupt.

1. *As to the claim of Swearingen & Biggs.* This firm has proven against the individual estate of William B. Hamilton for three-fourths of $100,000 and interest, this being the amount which they were compelled to pay out of their private means in order to pay off the debts of the conjoint firm. By the terms of the conjoint partnership agreement, as before stated, the profits and losses between the two firms of Anderson, Hamilton & Co., and Swearingen & Biggs, were to be divided in the proportion of three-fourths to the former and one-fourth to the latter. Swearingen & Biggs contend that, by the rules of law governing partnerships, as by the rules governing joint debtors, each partner is bound to contribute to the other his proportion of the loss which may be paid by that other partner in excess of that partner's own proportion; and that, in event of any partner being insolvent, the others and solvent ones must be assessed the portion of the insolvent ones also.

Anderson, Hamilton & Co. being insolvent and worthless, Swearingen & Biggs now claim the right to prove against William B. Hamilton, the only partner in said firm having assets, upon the ground that they have paid all the debts of the partnership, and that William B. Hamilton is responsible individually to them for three-fourths of the losses incurred in their conjoint business.

This claim is resisted by the creditors of the conjoint firm, who, under the arrangement of June 26th, were still entitled to prove against the estate of William B. Hamilton, as indorser, any balance that may remain due them after realizing from the assets turned over to the trustee.

The theory of Swearingen & Biggs, in this connection, is that the conjoint firm was composed, not of the two firms as partners, but of the five individuals composing these two firms, it being apparent that, if their claim is a partnership claim against Anderson, Hamilton & Co., the individual creditors of William B. Hamilton must be paid in full before the partnership creditors are entitled to any dividend from his estate. While it is ordinarly true that a partner cannot act as such except within the scope of the partnership business, and that one member of a firm cannot take in another partner without the assent of the co-partners, still I see no legal difficulty in the way of treating two firms as individual partners in a conjoint firm, if such be obviously the intention of the parties. Such seems to have been the case in *Cheap* v. *Cranmont*, 4 Barn. & Ald. 663, and there are a number of cases cited in Lindley on Partnership, 995, 998, where the members of firms were treated as partners, and allowed to prove against each other, when it could be done without prejudice to the creditors of both. It seems to be in each case a question of intent; and, in the case under consideration, I think the court ought to treat the conjoint firm, for the purposes of this case, as composed of two partners, viz.: Anderson, Hamilton & Co. and Swearingen & Biggs, for the following reasons:

*First.* No firm name was ever adopted. Each firm continued to carry on its own business and to make the paper of the conjoint firm in the name of the separate partners.

*Second.* The original agreement under which they became partners was signed by the two firms, and not by the individuals composing each firm.

*Third.* The profits and losses were divided in proportions allotted to the two firms, viz.: three-fourths to Anderson,

Hamilton & Co., and one-fourth to Swearingen & Biggs, and not to the individual members of either.

*Fourth.* The parties in this case have evidently treated the conjoint firm as composed of two partners, by proving their debt in the name of Swearingen & Biggs.

Neither of the members composing this firm claims that he has paid anything individually, but their claim is for a joint debt against Hamilton. But, conceding that Hamilton, individually, was to be considered the partner, and not the firm of Anderson, Hamilton & Co., I am unable to see how the case is taken out of the general rule, that a firm cannot prove against a partner in competition with the individual creditors of such partner; neither can a partner prove against a partner, unless they be engaged in separate and distinct trades. *Ex parte St. Barbe,* 11 Ves. 413; Pars. on Partnership, 493; Lindley on Partnership, 1007; Story on Partnership, § 391.

But there is another reason why this proof of debt should be expunged. While the creditors of the conjoint firm have acknowledged themselves satisfied, and have released and discharged their liabilities against both members of that firm, they have not been fully paid off, but have retained their right to prove against Hamilton, individually.

Certainly, in making this arrangement they could never have contemplated or intended that Swearingen & Biggs should come into competition with them. In releasing them upon payment of $66,000, when in fact they were liable to these creditors for the full amount of their claims, they undoubtedly took into consideration the amount that would probably be realized from the individual estate of the bankrupt.

Although the letter of the agreement is silent upon this point, it would be clearly at war with its scope and purpose now to permit Swearingen & Biggs to come into competition with these creditors, who are evidently doing them a favor by releasing them upon the payment of a less amount than that for which they were legally liable. The proof of this claim amounts, in effect, to an endeavor to retake a portion of the price paid by them for their release and immunity from further

liability. The exceptions to this claim must be sustained and the proof expunged.

2. *As to the claim of the Bank of Kentucky.* This bank is a holder of paper drawn by Swearingen & Biggs upon Anderson, Hamilton & Co., and indorsed by William B. Hamilton, to the amount of over $80,000, and has proved for the whole of its claim.

The trustee, prior to the filing of his petition by Hamilton, realized from the assets turned over to him by Swearingen & Biggs a sum sufficient to pay the creditors 50 per cent. on their debts, declared a dividend of that amount, and notified the creditors to call for it. The Bank of Kentucky declined to receive its dividend until after Hamilton filed his petition, but it has stood to the credit of the bank ever since the dividend was declared. I am clearly of the opinion, and so held upon the argument, that this 50 per cent. should have been credited by the bank before proving its claim.

The fact that it was not actually received is of no consequence. The dividend had been declared in their favor. They had been notified of it, and, as against other parties to the notes, must be deemed to have received it. They cannot thus take advantage of their own wrong to prove up the whole of their debt to the prejudice of other creditors. *Sohier* v. *Loring,* 6 Cush. 537; *In re Hicks,* 19 N. B. R. 299.

But it is insisted in this case that Hamilton had no right to waive his release of liability in favor of the creditors of the conjoint firm. Aside from the special provisions of the bankrupt act, there would be no difficulty in sustaining the validity of this waiver. It was a part of the contract under which the creditors agreed to release their claim against the conjoint firm, and was therefore not without consideration. Such reservations of a claim against indorsers have been repeatedly held valid. *Potter* v. *Greene,* 6 All. 442; *Toby* v. *Ellis,* 114 Mass. 120.

But it is insisted that this liability was released at a time when Hamilton was insolvent, and within four months prior to his filing of his petition in bankruptcy, and it must be held to have been a preference, and therefore invalid. I am una-

ble to concur in this conclusion. To constitute a preference, under section 5128, the party must make a payment, pledge, assignment, transfer or conveyance of a part of his property, either directly or indirectly, absolutely or conditionally, to some person not only having reasonable cause to believe him insolvent, but knowing that such pledge, assignment, payment or conveyance is made in fraud of the provisions of the bankrupt act.

There was no payment of money or conveyance of any property in this case, nor was there any evidence or reason to believe that the creditors of the conjoint firm contemplated any violation of the bankrupt act, or had any reason to believe they were obtaining an unlawful preference. But, aside from this, I do not understand that the bankrupt law will treat an arrangement for a compromise made by a party who subsequently becomes bankrupt as a fraud upon the act, provided it be made by all parties in good faith, and an honest belief on the part of the insolvent that he will be able to carry it out. *Mays* v. *Fritlon,* 20 Wall. 414; *Clark* v. *Skilton,* 20 Int. Rev. Rec. 175.

But one more question in this connection remains to be considered. Subsequent to the proving of its debt against Hamilton, and about a year after the first dividend of 50 per cent. was paid, the bank received another dividend of 25 per cent., which the assignee now claims should be credited upon its debt, upon the theory that the transfer to Hughes, the trustee, was, at the time it was made, a payment to the creditors of a sum equal to the value of the property received; and, as this property finally realized 85 per cent. of their debts, or 75 per cent. after the costs and expenses were paid, that these creditors, of whom the Bank of Kentucky is a representative, can only prove for the remaining 25 per cent.

This theory cannot be supported. The authorities above cited hold, and such I understand to be the law, that nothing less than the payment of a sum of money, or the present right to receive such money before the proof of debt is made, will prevent a creditor from proving for the whole amount.

In *Sohier* v. *Loring,* 6 Cush. 537, the creditor made a com-

position with the maker of the notes, whereby the maker conveyed certain property in trust to pay one-fifth of the debts, which the creditor accepted, reserving his remedy against the indorser. Here there was an agreement accepted by them to receive a specific sum, not an uncertain amount, to be made certain by the sale of property, and the court held it to be substantially a payment of that amount. It was also held in that case that the other creditors, who had made proof of their claims against the indorsers before they entered into the composition with the acceptors, were entitled to prove the full amount due upon their bills.

*In re Hicks,* 19 N. B. R. 299, the makers of the notes effected a composition with their creditors, the composition to be paid in three, six and nine months, for which notes were given. The creditor was offered the notes to which he was entitled, but refused to receive them until the twenty-fifth of September, 1878, when, one of them having matured, he accepted cash for that note and the other two notes. Meanwhile, on the ninth of September, the indorsers having been adjudicated bankrupts, the creditors proved against their estates for the full amount of the original notes. The learned judge for the southern district of New York held that as, at the time the proof was made against the indorser, no dividend had been paid or become payable to the creditor out of the estate of the maker, he was entitled to prove against the indorser for the whole debt. The case seems to be distinguishable from that of *Sohier* v. *Loring* only in the fact that he refused to receive the composition notes until after he had filed his proof of debt.

But both of these cases are clearly distinguishable from the one under consideration, in the fact that the compromise with the conjoint firm was for no specific amount of money, but for certain property, the value of which was not determined until long after the proofs of debt were made. The property received by the trustee might not have paid more than 50 per cent. had the market taken a decided upward turn. It might have realized the entire amount of their claims, but it was difficult, at the time the agreement was

made, to fix the value of the composition, and utterly impossible to know how much it might ultimately realize. So far as it was fixed by the payment of 50 per cent. I have no doubt the credit should be given, but I apprehend it would be exceedingly difficult even now to say what the property was worth at the time it was turned over, and, upon the theory of the assignee, the amount of credit must be gauged by this value.

We are not at liberty to say that it was 75 per cent., from the fact that 75 per cent. was subsequently realized. If a composition payable *in futuro* can ever be allowed as a credit, it must be a composition for a fixed and definite sum.

I think the Bank of Kentucky is entitled to prove one-half of its original claim.

3. *As to the claim of William Hughes, trustee.* The facts connected with this claim are substantially as follows: While Anderson, Hamilton & Co. had charge of the hog product for sale, they shipped lard of the value of about $68,000 to New York, which was done without the knowledge or consent of Swearingen & Biggs. The proceeds of the lard were first charged to Anderson, Hamilton & Co., on the books of the conjoint firm, and were then charged to William B. Hamilton, by his direction, and he received the proceeds of the sale, amounting to the principal of the debt proven.

The account between Anderson, Hamilton & Co. and Swearingen & Biggs has not been settled, but in no event can the creditors of the conjoint firm be paid in full, nor will the estate of Hamilton pay on account of claims due by the conjoint firm a sufficient sum to discharge the liability for the lard thus applied to his own use. Hughes, as the trustee of the conjoint firm, now seeks to prove against the individual estate of William B. Hamilton a claim for the property so appropriated.

Section 5121, relating to the bankruptcy of partnerships, provides that "the assignee shall keep separate accounts of the joint stock or property of the copartnership, and of the separate estate of each member thereof; and, after deducting out of the whole amount received by the assignee the whole of

the expenses and disbursements, the net proceeds of the joint ,stock shall be appropriated to pay the creditors of the copartnership, and the net proceeds of the separate estate of each partner shall be appropriated to pay his separate creditors."

The section contains a further provision that in case there is a surplus, after payment of the debts peculiar to each partner or the individual member, it shall be paid to the creditors of the other. This section is a substantial embodiment in. statutory form of an equitable principle, which has long obtained both in England and this country, to the effect that ,partnership assets must go, primarily, to pay partnership creditors, and individual assets to individual creditors. In England, however, where the general rule originated, it is subject to certain well established exceptions, one of which is that, if the partner has fraudulently converted property or money of the firm to his own use, proof on behalf of the joint estate is allowed in respect of such property against his separate estate, and in competition with his separate creditors. Lindley on Partnership, 996, 1004, 1007; *Lodge* v. *Fendall,* 1 Ves. Jr. 166; *Ex parte Harris,* 2 Ves. & B. 210; *Ex parte Young,* 3 Ves. & B. 34; *Ex parte Smith,* 6 Mad. 2.

It is insisted, however, in opposition to the proof of debt in this case, that the exceptions mentioned to the English rule ought not to be incorporated into our bankruptcy system, and cannot stand, in the face of the express provision of section 5121, above quoted. There are some cases which undoubtedly lend support to this theory. In the *Somerset Potters' Works* v. *Minot,* 10 Cush. 592, it was held by the supreme court of Massachusetts that under the insolvent law of that state, which contained a provision similar to that of the bankrupt act, the net proceeds of the separate estate of each partner must be first appropriated to pay his separate creditors, and that this rule was not subject to any exceptions which would be admitted in England. It was said in that case that "if there be no joint property the creditors of the firm cannot, under the statute, share in the separate property *pari passu* with the separate creditors," although it was admitted that in

England a case of this kind constituted an exception to the general rule.

Although in this case there appeared to have been sufficient joint assets of the firm to take the case out of the exception and make the general rule apply, the court, in delivering the opinion, observed: "This whole matter of exceptions to the general rule of distribution of joint and seperate assets, as we have already intimated in considering another point, is of very questionable expediency, and we are not disposed to favor its introduction into our system. We are strongly inclined to the opinion that our rule of distribution of the assets of insolvent debtors, being a statutory provision, is to be carried into effect according to its terms. The legislature has created the rule, but has not appended to it the exceptions." See, also, *Howe* v. *Lawrence*, 9 Cush. 559.

In at least one case arising under the bankrupt law these authorities have been accepted as a correct exposition of the principles which should guide us in the distribution of partnership and individual assets. *In re Byrne*, 1 N. B. R. 464.

In the case of *Lane*, 10 B. R. 135, the money was drawn out of the firm by one partner with the assent of his copartners. As there was no fraudulent withdrawal of the funds, the case cannot be considered as conflicting with the English authorities.

So, also, *In re McLean*, 15 N. B. R. 333, while the Massachusetts cases are approved, and the intimation thrown out that, under the bankrupt law, there can be no exceptions to the method of distribution provided by section 5121, the fact was that the case was not brought within any one of the exceptions. A firm had advanced capital to an individual member beyond his share, and it was held, I have no doubt, properly, that the assignee of the firm could not come upon the separate estate of the debtor copartner for the use of the creditor copartnership until all the joint creditors were fully satisfied.

In a number of cases, however, exceptions to the general rule have been recognized, and the Massachusetts cases held as not applicable to the bankrupt law.

*In re Jewett,* 1 N. B. R. 419, Judge Drummond held that where there are both individual and partnership creditors, but the assets were individual only, consisting of goods purchased by the bankrupt from the partnership on its dissolution, prior to the bankruptcy, the creditors would be entitled to be paid *pari passu* with the individual creditors.

In the subsequent case of *Knight,* 2 Biss. 518, Judge Drummond gave the matter a very careful and extended consideration, and held that the federal courts, in construing the bankrupt law, were not bound by the Massachusetts cases, and an exception to the rule was adopted, that "where there are both partnership and individual debts, but no partnership assets and no solvent partner, the debts of the firm and of the members can be proved, and the estate be distributed *pari passu* among the creditors. To the same effect are *In re Downing,* 3 N. B. R. 748; *In re Rice,* 9 N. B. R. 373; *In re Long,* Id. 227; *In re McEwen,* 12 B. R. 11.

I find no case in which the question has arisen upon the fraudulent appropriation by one of the partners of a portion of the assets; but, as the English cases recognize this as a well established exception to the general rule, I see no reason why we should not regard it as equally applicable here.

But I have come to the conclusion, with considerable hesitation, that the facts do not make out a case of fraudulent abstraction of the partnership funds. Obviously, it is not every case where a partner overdraws his account, even without the consent of his other partners, that fraud can be imputed. Anderson, Hamilton & Co. had the entire control and management of the partnership business, and although Swearingen & Biggs were actually and legally partners in the concern, they do not appear to have taken part in the actual conduct of its business, and apparently lent their names to Anderson, Hamilton & Co. for their accommodation, with the understanding that they were to have one-quarter of the profits for so doing.

The withdrawal of the $68,000 was made in February, was entered upon the books of the conjoint firm, and was afterwards charged to Hamilton's individual account. No bank-

ruptcy at this time was contemplated, and there is no evidence of an intent by Hamilton to increase his individual estate for the benefit of his creditors. The authorities seem to hold that to constitute a case of fraud the funds must have been abstracted, not only without the consent of the other partners, but that it must have been done secretly, as by a false entry upon the books, or by the omission to make any entry at all. Thus, in *Ex parte Smith*, 1 Glyn & I. 74, it was held that if one partner be entrusted with the entire management of the partnership concern, and he withdraws moneys for his separate use, which he duly and openly enters in the partnership books, this is not a fraud which will entitle the joint estate to prove against the separate; otherwise, if by the entries in the books he disguises the transaction or wholly omits and conceals it.

In *Ex parte Lodge* v. *Fendall*, 1 Ves. Jr. 166, Lodge, who had the whole management of the trade, without the knowledge of Fendall paid several debts of his own with the property of the partnership to the amount of $36,000.

Lord Thurlow at first was inclined to hold that this constituted a case of fraud, but finally dismissed the petition, regarding the evidence as insufficient. In *Ex parte Harris*, 2 Ves. & B. 210, it was considered that, although the misapplication of the funds was without the knowledge, privity, consent or subsequent approbation of the other partner, yet the facts by reason and in consequence of which that application was made were with that knowledge, consent, etc., and that proof should not be admitted. In *Ex parte Young*, 3 Ves. & B. 31, one partner drew bills clandestinely to a large amount and absconded, and it was held that proof should be allowed in favor of the joint estate, no entries having been made of the bills abstracted; and the lord chancellor observed that if the other partners could have known that their copartner had applied the copartners' property to his own purposes, from their immediate or subsequent knowledge, upon their subsequent dealings, their consent would be implied.

In *Ex parte Hinds*, 3 De Gex & Small, 613, two partners

were trading as merchants at Liverpool and Barbadoes, one residing and transacting the business at each place. The Liverpool partner, without the authority or knowledge of the other, laid out partnership moneys in the purchase of railway shares in his own name, but on account of the partnership, and in substance declared himself a trustee of the shares for the firm; afterwards the firm became bankrupt. It was held that the joint estate had no right of proof against the separate estate of the Liverpool partner for the amount laid out upon the shares. All the prior authorities are reviewed by the commissioner in this case, which, in its facts, is very much like the one under consideration, and he came to the conclusion, in which he was sustained by the vice chancellor, that as the entries were made openly upon the books, and as these books were open to the inspection of the other partner, who, if he had exercised only ordinary diligence, would have acquired full information on the subject, his negligence amounted to an implied consent. Story on Part. § 390, 392; Pars. on Part. 491, 494.

These cases indicate that to constitute fraud there must be something more than mere abstraction of the funds without the knowledge of the copartner, particularly if it be done by one having the sole management of the business. Upon the whole, I think the conclusion of the register in postponing this claim to those of the individual creditors of Hamilton ought to be confirmed. But I will not undertake to say that the assignee might not maintain a petition to have the money thus charged over to Hamilton administered as a part of the joint estate, as was done in *Ex parte Hinds*, above cited.