## In re KNOWLTON & CO.

(District Court, E. D. Pennsylvania. May 24, 1912.)

### No. 3,716.

BANKRUPTCY (§ 351*)—PARTNERSHIP—MARSHALING OF ASSETS.

 Where the members of a bankrupt partnership were a natural person and another partnership, which was also insolvent, in the marshaling of assets under Bankr. Act July 1, 1898, c. 541, § 5f, 30 Stat. 548 (U. S. Comp. St. 1901, p. 3424), the constituent partnership is to be treated as an individual partner, and its assets applied first to the payment of its own creditors; the surplus only, if any, being distributable to the creditors of the bankrupt.

 [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 563, 564; Dec. Dig. § 351.*]

In the matter of Knowlton & Co., a partnership, bankrupt. On certificate of referee. Order reversed.

James McMullan, Horace P. Dorman, and Henry P. Brown, all of Philadelphia, Pa., for trustees.

James A. Stiles, of Gardner, Mass., and Henry G. Hart, of Philadelphia, Pa., for creditors.

J. B. McPHERSON, Circuit Judge. The bankrupt is the firm of Knowlton & Co., a partnership doing business in Philadelphia. The partners were not adjudicated, but this fact is not important in the present controversy. The order now under review distributed a fund whose source was the insolvent estate of one of the partners. This partner carried on a separate business in Gardner, Mass., and made an assignment there for the benefit of creditors under the laws of the state. The assignees liquidated the assets of the Gardner business and paid over the net proceeds to the trustee in bankruptcy. The question for decision is: What rule shall govern the distribution?

Have the Gardner creditors a prior claim? Or must they admit the Philadelphia creditors upon an equal footing?

It is agreed that subsection "f" of section 5 furnishes the rule for distribution, but the contestants are not in harmony concerning the scope of the rule. Briefly, the point is this: The partners in the firm of Knowlton & Co. were an individual and the Gardner partnership, which was a separate and distinct association from the bankrupt. Its name was A. & H. C. Knowlton, and it had a business, debts, and property of its own. Its firm property produced the fund in question, and this fund should go first to its distinctive partnership creditors, unless the creditors of the Philadelphia firm are entitled to share upon equal terms. The Gardner creditors contend that the firm of A. & H. C. Knowlton should first pay its distinctive partnership debts before being obliged to contribute toward the distinctive partnership debts of Knowlton & Co.; while the Philadelphia creditors contend that they are partnership creditors both of Knowlton & Co. and also of A. & H. C. Knowlton, and are therefore entitled to share pari passu with the distinctive partnership creditors of the Gardner firm. Section 5f is as follows:

"The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of his individual debts. Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be added to the assets of the individual partners in the proportion of their respective interests in the partnership."

This is not a new rule; on the contrary, it is old and well-known, and where each member of a firm is a natural person it is not hard to apply it. There is no occasion to apply it unless the firm is insolvent, and the following discussion refers to such a situation. But what should be done when a member of the insolvent firm is the association called a partnership? Should that entity—if I may use a convenient phrase—be treated in such a case as if it were a mere congeries of natural persons? And should its property be treated, contrary to the fact, as if it belonged to one, or to several, natural persons? Unless it should be so treated, the present distribution cannot be sustained. The proceeds of the Gardner partnership property is not the proceeds of the Philadelphia partnership property. It is derived, as it seems to me, from what may fairly be treated as the separate property of one partner in the Philadelphia firm; and (while it is no doubt ultimately liable for the Philadelphia partnership debts) it is, and should be, liable primarily for the distinctive partnership debts of the Gardner business. In my opinion, when the Philadelphia firm received into its membership the individuals already composing the Gardner firm, it could not help receiving them as they really were, namely, in their character as members of the latter firm. They were, first of all, partners in a separate business, and they did not divest themselves of that character by superadding a similar character. The proceeds of the Gardner property comes, therefore, from an estate

which closely resembles a partner's separate estate; and this, of course, is primarily chargeable with the payment of his separate debts. The creditors of the Gardner firm and the creditors of the Philadelphia firm do not have the same debtor. There are two distinct debtors and two distinct sets of creditors; and the debtors have only this much in common, namely, that certain natural persons happen to be members of both firms, and therefore to be liable ultimately to both sets of creditors. Whatever may be said concerning the entity theory, there must, I think, be some occasions when a partnership may be properly dealt with apart from the natural persons that compose it. Of course, if the Gardner firm had been a corporation empowered to become a partner, the argument would scarcely be made that the corporate creditors must admit the Philadelphia creditors to share pari passu in the proceeds of the corporate property. No doubt, a partnership is not a corporation; but certain obligations are inseparably connected with the former class of associations. Its property is not in all respects like the property of a natural person, but when insolvency occurs—and, I repeat, no other situation is being considered—it is held to be applicable primarily to satisfy one class of creditors. Does the property lose this characteristic, when the partnership enters a second firm? Is the mere act of taking on the new relation immediately effective to make the property primarily liable to a second and a different class of creditors? And especially in view of the fact that the second class are really primary creditors of another association, differently composed? It seems to me reasonable to say that the first firm can only bring to the second firm what it is able to bring; and that is, a liability to the second set of creditors, subject to an already existing, and a primary, liability to its own creditors. Equitably, as I look at the subject, its distinctive debts should be first paid before it is called upon to pay the debts of the second association. Undoubtedly, the partnership property of the Gardner firm is liable for the partnership debts of that firm. To charge it also with the debts of another association—debts which it did not contract in the business of the Gardner firm—seems to lack sufficient support in principle. Perhaps what is in my mind may be a little more clear if it be put in a somewhat different form. When the Gardner firm became a partner in the Philadelphia firm, the sum total of what it brought into the Philadelphia association had already been pledged—if I may so say—to objects defined by well-established legal rules. For the present purpose, the most important of these objects was the payment of its own distinctive partnership debts. It could only contribute to the Philadelphia firm what might remain after this object should be accomplished. To use an illustration, without attempting to speak with precision: The Gardner firm's contribution to the Philadelphia partnership was already incumbered by an obligation in favor of a certain class of creditors, and the creditors of the Philadelphia firm were of necessity obliged to take a subordinate position.

It makes little difference by what name the peculiarity of partnership property is described. The essential matter is to observe what actually takes place; and I think it cannot be denied that as soon as

property is put into a partnership it differs in certain respects from the property of natural persons. If insolvency takes place, such property is set apart by the law for a particular object—the payment of partnership debts—and it cannot be diverted therefrom. And this means—primarily the debts of the partnership property to which it was first contributed, and not the debts of a subsequent and a separate association. These may, indeed, be charged upon it as a later and a subordinate obligation, but I think the first obligation continues to be prior in right as it is prior in time; otherwise, the property first contributed is charged primarily, not only with the debts contracted by the first association, but with the debts contracted by another and a distinct association, and thus becomes liable primarily for obligations it did not undertake. As it seems to me, this is undeniable, and if I am right it should control the present dispute.

What has thus been outlined will indicate the view I am disposed to take. The subject is not free from subtleties, and each side of a rather perplexing question may be stated with plausibility. The briefs of counsel cite many cases, but in almost all of them the courts are merely marshaling assets where a firm is composed of natural persons only. These cases are not especially helpful, and need not be dwelt upon. Among the rest, however, there are three of more significance, because they deal with facts more or less similar to those now in hand —Re Hamilton (D. C.) 1 Fed. 800, Bullock v. Hubbard, 23 Cal. 495, 83 Am. Dec. 130, and Re Gilbert, 94 Wis. 108, 68 N. W. 863. Of these, Re Hamilton is the least relevant. The facts were as follows: A partnership was composed of two firms, A. and B. Firm A. was to receive one-fourth of the profits and pay one-fourth of the losses, and firm B. was to receive and pay three-fourths. The conjoint firm was largely indebted upon commercial paper that had been drawn for conjoint purposes. This had been indorsed in his character as a natural person by Hamilton, the bankrupt, who was also a member of B. The conjoint firm became insolvent, and the settlement of its affairs was intrusted to A. Thereupon the conjoint creditors agreed—and the agreement was carried out—that if A. would turn over the conjoint assets, and would also pay $66,000, A. should be relieved from further liability for the conjoint debts. One term of this agreement was that Hamilton's liability as indorser should not be affected. Afterwards Hamilton went into bankruptcy, and A. presented a claim against the estate, based not upon the conjoint commercial paper, nor upon the $66,000, but upon an additional sum of $100,000 that had been previously paid out of the assets of A. in satisfaction of certain conjoint debts. For three-fourths of this sum A. sought to prove against Hamilton as a natural person. The court said:

"The theory of [firm A.] in this connection is that the conjoint firm was composed, not of the two firms as partners, but of the five individuals composing these two firms."

And added that, if the claim was

"a partnership claim against [firm B.], the individual creditors of William B. Hamilton must be paid in full before the partnership creditors are entitled to any dividend from his estate."

But the court rejected the foregoing theory, and decided that in the case under consideration the conjoint firm should be treated as composed, not of the five natural persons, but of two associations as partners, namely, A. and B. The claim of A. was thereupon rejected for two reasons. To use the court's language:

(1) "Conceding that Hamilton individually was to be considered the partner and not [firm B.], I am unable to see how the case is taken out of the general rule that a firm cannot prove against a partner in competition with the individual creditors of such partner; neither can a partner prove against a partner, unless they be engaged in separate and distinct trades."

And the other reason was:

(2) "While the creditors of the conjoint firm have acknowledged themselves satisfied, and have released and discharged their liabilities against both members of that firm, they have not been fully paid off, but have retained their right to prove against Hamilton individually. Certainly, in making this arrangement they could never have contemplated or intended that [firm A.] should come into competition with them. In releasing them upon payment of $66,000, when in fact they were liable to these creditors for the full amount of their claim, they undoubtedly took into consideration the amount that would probably be realized from the individual estate of the bankrupt.

"Although the letter of the agreement is silent on this point, it would be clearly at war with its scope and purpose now to permit [firm A.] to come into competition with these creditors, who are individually doing them a favor by releasing them upon the payment of a less amount than that for which they were legally liable. The proof of this claim amounts in effect to an endeavor to retake a portion of the price paid by them for their release and immunity from further liability."

It is clear, I think, that the point now under consideration did not squarely arise and was probably not considered, although the drift of the court's reasoning seems to be in favor of the view I have been trying to express.

Bullock v. Hubbard comes nearer. There firm A. was a member of firm B. (composed of A. and a natural person), and also of firm C. (composed of A. and a different natural person). Two creditors both of B. and of C. issued attachments that were levied on the property of these two firms, and also upon the property of A. Afterwards a creditor of A. procured and levied an attachment against that firm alone. All the property levied upon was sold. When the sheriff came to distribute the fund, he applied the money derived from the property of B. and C. to the first two attachments, and then had in his hands money derived solely from the property of A. This was claimed by all of the attaching creditors, but it was decided to belong to the distinctive creditor of A., although his writ was latest in time; the ground being that the separate claims against a partnership must first be paid before the property of such partnership can be subjected to claims arising out of its membership in a conjoint firm. The court said:

"The judgment of the court below is correct. It has been repeatedly decided by this court that the creditors of a partnership are entitled to a preference over the creditors of the individual partners in the payment of their debts out of the partnership property, or moneys arising therefrom, without regard to the priority of attachment liens [citing cases]. And the same

principle applies as between the creditors of several partnership firms, as in the present case."

This decision is nearly, if not quite, in point. If we substitute the Gardner firm for A. and the Philadelphia firm for B. (putting C. aside as unimportant for the parallel), it is a decision that the creditors of the Philadelphia firm could not claim against the assets of the Gardner firm on the same footing with the distinctive creditors of the Gardner firm, even if the Philadelphia creditors had obtained an apparently prior lien by execution process. A fortiori, if they had no such lien, they could not successfully claim on the ground that the general rules governing the marshaling of assets gave them an equal standing with the Gardner creditors.

The remaining case, Re Gilbert, was as follows: Firm A., doing business at Blair, was a partner with a natural person in firm B., doing business in another town. Both firms made assignments for the benefit of creditors. The assets of B. were only sufficient to pay a small percentage of its distinctive debts. The assets of A. were sufficient to pay its own distinctive creditors in full, if they were prior in right, but not sufficient to pay them, if the creditors of B. were entitled to share on an equal footing. The creditors of B. set up a claim to be so entitled, but their contention was denied; the court saying:

"[Firm A.] as a partnership, was a member of [firm B.]. The debts of [B.] were therefore debts for which [A.] and its individual members were liable. Their assignment was in trust for all their creditors. Neither of its members had any individual property or estate that passed to their assignee, and it does not appear that they had any individual creditors. Therefore, after the application of the partnership property of the firm to the payment of the debts contracted in carrying on its business at Blair, the residue, so far as necessary, would be applicable to the payment of debts of [B.] for which [A.] as such was liable, in so far as the same could not be discharged by and with the assets of [B.]. * * * It is evident, from the manner in which the two firms dealt with each other and the account that was kept between them, that [A.] as such was, as it might well be, an individual member, so to speak, of [B.]—[citing cases]. Therefore the creditors of [B.] might, as the contestants in this case did do, come into the case of the [A.] assignment and prove their claims, and may obtain payment out of the assets of that firm *after* the creditors of the latter firm in their business at Blair have been paid, for any unsatisfied balance remaining unpaid after the application of the assets of [B.], and which would constitute a primary fund for their payment."

It will be observed that the court takes for granted the existence and correctness of the rule now contended for by the Gardner creditors. While, therefore, the subject is not discussed, the decision seems to be in point.

Without extending the discussion, my conclusion is that (while the Philadelphia creditors may prove against the Gardner fund) the Gardner creditors have a prior claim thereon, which must first be satisfied. The referee's distribution cannot be sustained; but, as it must be readjusted and a final order entered before my ruling can be reviewed, the referee is directed to make a new distribution in accordance with this opinion, and to report the same on or before June 5th.