In re Assignment of Charles J. L. Meyer: Jewell, Assignee, Appellant, vs. Sherman, Respondent. Same, Appellant, vs. First National Bank of Fond du Lac, Respondent.

*January 15 — February 3, 1891.*

*Voluntary assignment: Promissory notes: Proof of claim against estates of maker and indorser: Dividends.*

Where, after a note has become due and an indorser has been charged with its payment, both the maker and the indorser make assignments for the benefit of creditors, the holder of the note may prove his claim against the estate of each severally for the full amount due; and a dividend received from the estate of the maker after the claim has been proved against the estate of the indorser will not affect the right to receive a dividend from the latter estate upon the full amount of the original claim, provided both dividends do not exceed the whole amount of such claim.

APPEALS from the Circuit Court for *Fond du Lac* County.

The case is stated in the opinion.

For the appellant there was a brief by *Hooper & Hooper*, and oral argument by *Moses Hooper*. They contended, *inter alia*, that the question whether dividends will be allowed to a secured creditor of an insolvent estate on his entire claim, or only on the balance remaining after application of his securities, is in some aspects like that at bar.

A decision that the secured creditor must first exhaust or apply his security would be a decision, *a fortiori*, that the creditor of the indorser must, before taking dividends, reduce his claim by the amount paid by the maker. Such decisions are numerous. *Upson v. Milwaukee Nat. Bank*, 57 Wis. 526, 530; *Amory v. Francis*, 16 Mass. 308; *Lanckton v. Metcalf*, 6 Met. 305; *Richardson v. Wyman*, 4 Gray, 553; *Farnum v. Boutelle*, 13 Met. 159; *Middlesex Bank v. Minott*, 4 id. 325; *Haverhill L. & F. Asso. v. Cronin*, 4 Allen, 144; *Merchants' Nat. Bank v. Eastern R. Co.* 124 Mass. 518; *Hamor v. Eastern R. Co.* 133 id. 315; *Dickinson v. Metacomet Nat. Bank*, 130 id. 132; *Bristol Co. Sav. Bank v. Woodward*, 137 id. 412; *Franklin Co. Bank v. Greenfield Bank*, 138 id. 515; *Wurtz v. Hart*, 13 Iowa, 515; *Clarke v. Bancroft*, id. 320; *Besley v. Lawrence*, 11 Paige, 581; *Third Nat. Bank v. Lanahan*, 66 Md. 461; *In re Souther*, 2 Lowell, 320; *La Plant v. Convery*, 98 Ind. 499, 501; *Winton v. Eldridge*, 3 Head (Tenn.), 361; *Fields v. Wheatley*, 1 Sneed, 351–4; *Moore v. Dunn*, 92 N. C. 63, 67; *Bank v. Alexander*, 85 id. 352; *Midgley v. Slocomb*, 32 How. Pr. 423; 1 Story, Eq. Jur. sec. 633; *Greenwood v. Taylor*, 1 Russ. & My. 185; *Ex parte Bank of Scotland*, 19 Ves. 310; *Ex parte Hobhouse*, 3 Mont. & Ayr. 269; *Lodge v. Prichard*, 1 D., J. & S. 610; *In re Polethorpe*, L. R. 20 Eq. 273; *Kellock's Case*, L. R. 3 Ch. 769; *Baines v. Wright*, L. R. 15 Q. B. 102; *S. C.* 16 id. 330; *Paris v. Geen*, L. R. 8 App. Cas. 606; *In re Lee*, L. R. 14 Ch. 82; *Couldery v. Bartrum*, 19 id. 394–402; *McHenry v. La Societe Francaise*, 95 U. S. 458; *Bell v. Fleming*, 12 N. J. Eq. 13, 25. The vital question is, At what time must the payment be made to operate as a reduction of a claim on which dividends are to be made? Or at what time do we finally fix the relation of debt and credit for purpose of distribution? The authorities name three datum lines: First, the time of making of the assignment, or adjudication of bankruptcy,

or death of insolvent. In favor of this are three cases: *Citizens' Bank v. Patterson*, 78 Ky. 291; *Miller's Estate*, 82 Pa. St. 113; *Brown v. Merchants' & F. Nat. Bank*, 79 N. C. 244. They are contrary to all other cases. Second, time of filing proof of claim. In favor of this are quite a number of cases: *Ex parte Wildman*, 1 Atk. 109; *Sohier v. Loring*, 6 Cush. 548, 549; *In re Hicks*, 19 N. B. R. 299; *In re Hamilton*, 1 Fed. Rep. 800. This rule is illogical. It fixes a separate time for each creditor. Third, time of dividend or distribution. There are authorities maintaining this in each of the three classes of insolvent estates: (1) In involuntary assignments. *Third Nat. Bank v. Lanahan*, 66 Md. 461; *Midgeley v. Slocomb*, 32 How. Pr. 423. See, also, *Irons v. Manufacturers' Nat. Bank*, 27 Fed. Rep. 591–597. (2) In bankruptcy. *Ex par'e Lefebvre*, 2 P. Wms. 407; *In re Howard*, 4 N. B. R. 571, 578; *In re Farnum*, 6 Law Rep. 21; *Ex parte Brunskill*, 4 Deac. & Ch. 442; *Ex parte Hancock*, 1 Mont. & Ayr. 220; *Ex parte Hornby*, De Gex, 69; *Ex parte Cotesworth*, 1 Deac. & Ch. 281, Mont. & B. 92; *Cockerell v. Dickens*, 1 Mont., D. & De Gex, 45. (3) In estates of insolvents. *Lowell v. French*, 54 Vt. 193, 199; *Meachem v. Pinson*, 60 Miss. 217, 225; *West v. Bank of Rutland*, 19 Vt. 403, 409.

For the respondent *Sherman* there were briefs by *Ryan & Merton*, attorneys, and *George D. Van Dyke* and *Charles E. Shepard*, of counsel, and the cause was argued orally by *E. Merton* and *Mr. Shepard*.

*Edward S. Bragg*, of counsel, for the respondent *First National Bank of Fond du Lac*.

In behalf of other persons having claims similar to those of the respondents, a brief was filed by *Colman & Sutherland*.

TAYLOR, J. In the above-entitled actions the assignee has appealed from an order made in each of said cases upon

the proof of the several claims of the respondents against the estates in the hands of the said assignee. The claim in each case is made upon a promissory note held by the respondent. The notes were made by the Fond du Lac Furniture Company, a corporation doing business in Fond du Lac, and were indorsed by said Charles J. L. Meyer personally. The notes remain unpaid, and the holders of the notes have taken the proper steps to charge said Meyer as indorser of the same. After said notes became due, and after said indorser had been duly charged as the indorser upon each, both the furniture company and Meyer became insolvent, and each made an assignment under the statute, and in each case an assignee was duly appointed and qualified. The respective holders of said notes proved their claims for the whole amount of the notes against the estate of the furniture company. To this no objection was made. They then severally offered to prove, and the court permitted them to prove, their claims for the whole amount of said notes against the estate of Charles J. L. Meyer. To this the assignee of the estate of Meyer objects, and insists that the proofs of the claim against the estate of Meyer should not be for the whole amount due on the notes, but should be proved conditionally, and that the claim proved and entitled to a dividend in the Meyer estate should, before a distribution of said estate, be reduced by the full amount of any dividend or dividends which may be received, or which the claimants may be entitled to receive, on said notes from the estate of the furniture company. In other words, that the claim proved in the Meyer estate, upon which the holders of the notes should receive a dividend from the estate, should be first reduced by the full amount of dividends received from, or which the claimants may become entitled to receive from, the furniture company. The learned circuit court rejected this claim on the part of the assignee, to have the amount of the claim against the

Meyer estate, upon which a dividend in that estate should be calculated, ultimately reduced as contended for by the assignee. This appeal is made for the purpose of settling the rights of the creditors having the claims above stated, as well as the rights of other creditors similarly situated in relation to said insolvent estates. Some objection was made as to the appealability of the orders, but as most of the attorneys interested in sustaining the ruling of the circuit judge made no objection of that kind, we shall consider the appeal upon its merits.

The question is this: Can a man who holds a promissory note against the maker and an indorser thereon, after the same becomes due, and after the indorser has been duly charged with payment of the note, and when, before any payment has been made thereon by either maker or indorser, the maker and indorser each make a voluntary assignment for the benefit of their creditors, prove his claim against the estate of the maker and of the indorser severally for the whole amount due on such note? The question is so well settled by the authorities that it is not controverted by the learned counsel for the appellant in this case. That the holder of the note is the creditor of each severally for the whole amount due on the note, is uncontroverted, all courts holding that he may bring separate actions upon the note against the maker and indorsers for the whole amount due, and have several judgments for that amount (*Cowles v. McVickar*, 3 Wis. 725; *Charles v. Denis*, 42 Wis. 56); and that he may pursue his remedy upon such judgments until his debt is fully satisfied, and that if he can obtain satisfaction of such debt by enforcing the judgment against the indorsers alone he may do so without any hindrance. The indorser himself has no right, in law or equity, to compel his creditor to enforce payment for any part of the judgment out of the assets of the maker before enforcing payment from him. I do not understand the learned counsel

for the appellant to dispute this proposition.  If we rightly
understand his contention, it is this: that after both parties
to the note become insolvent and the estates of each are
transferred to an assignee, the other creditors of the as-
signee of the indorser have, in equity, the right to insist
that the holder shall first pursue his remedy against the
maker and recover what he can from the assets of the
maker, and that the amount so recovered must be applied
as so much paid on his debt; and that as against the estate
of the indorser, as between himself and the other creditors
of such indorser, he can only have a dividend upon the
amount remaining unpaid after so applying what has been
realized from the estate of the maker.  Perhaps the conten-
tion of the learned counsel does not go to this extent, as he
need not upon the facts of this case.  He, perhaps, does not
intend to insist that the holder of the note must pursue his
remedy against the estate of the maker in the hands of the
assignee before claiming a dividend for the whole amount
of the note against the estate of the indorser; but he does
contend that if he proves his claim against the maker, and
obtains a dividend against that estate, the amount of such
dividend must be deducted from the amount due on the
note, and he can only have a dividend upon the amount of
the note, less the dividend awarded to him from the estate
of the maker.  The contention is, in short, that any divi-
dend awarded to the holder from the estate of the maker
must be treated, so far as the creditors of the indorser are
concerned, the same as a payment made on the note by the
maker before the assignments were made, or before the
holder made his proofs of claim against the estate of the in-
dorser.

The learned counsel says: "We all agree that if the
maker pays any part of the sum due on the note before the
assignments are made, or even before the parties prove.
their claims against the several estates, the holder can only

In re Meyer.

prove in either estate for the amount remaining unpaid on said note, and consequently can only have a dividend in either on the sum remaining unpaid." And he asks why he should have a dividend on the whole amount, especially against the other creditors of the indorser, because such payment is obtained from the estate of the maker after the proofs of claim are made against that estate. The learned counsel for the appellant admits that the distinction he suggests has been made by most of the courts in this country and in England, where some different rule has not been established by statute law, and that the great weight of authority is against the rule he contends for; but, as he says, it is a new question in this court, and if there be no good sense or reason for the rule we ought to repudiate it and establish the rule he contends for. If it be as the learned counsel contends, that there is no sense or reason for the rule, we ought not, perhaps, to follow it. But before we determine that the rule is not founded on reason or good sense, we must give due weight to the fact that the most learned judges and courts in this country and in England have established the rule, and they insist that it is founded on right, reason, good sense, and upon well-established principles of equity. It certainly becomes us to give due weight to the opinions of these learned judges and courts, and to be absolutely satisfied that they have for so many years been violating reason and good sense, before we determine to set aside their reasoning and establish a new rule which in our opinion is based on good sense and sound logic. The following list of authorities, with many others not cited, sustain the ruling of the circuit judge that the holder of a note may prove his claim for the whole amount due on it at the time the claim is proved against the estate of the indorser, and that the fact that the holder may have also proved his claim against the maker, and that he may be entitled to or has received a dividend from the

estate of the maker after such proof against the indorser, does not affect his right to receive a dividend against that estate upon the full amount of his original claim: *In re Bates*, 118 Ill. 524; *Morrison v. Kurtz*, 15 Ill. 193; *Sweet v. Redhead*, 76 Ill. 374; *Brown v. Cozard*, 68 Ill. 178; *Findlay v. Hosmer*, 2 Conn. 350; *West v. Bank of Rutland*, 19 Vt. 403; *Morris v. Olwine*, 22 Pa. St. 441; *Miller's Estate*, 82 Pa. St. 113; *Graeff's Appeal*, 79 Pa. St. 146; *Patten's Appeal*, 45 Pa. St. 151; *Citizens' Bank v. Patterson*, 78 Ky. 291; *Brown v. Merchants' & F. Nat. Bank*, 79 N. C. 244; *Moses v. Ranlet*, 2 N. H. 488; *Walker v. Baxter*, 26 Vt. 710; *In re Souther (Ex parte Talcott)*, 2 Low. 320; *Allen v. Danielson*, 15 R. I. 480; *Sohier v. Loring*, 6 Cush. 537; *Fuller v. Hooper*, 3 Gray, 334; *People v. Remington*, 121 N. Y. 328; 1 Story, Eq. Jur. § 640; Jones, Pledges, § 587; *South. Mich. Nat. Bank v. Byles*, 67 Mich. 296; Sheld. Subr. § 182; *In re Hobson*, 46 N. W. Rep. (Iowa), 1095; *Allen v. Herrick*, 15 Gray, 275, 289; *Blake v. Ames*, 8 Allen, 318; *Nat. M. W. Bank v. Porter*, 122 Mass. 308; *In re Hicks*, 19 N. B. R. 299; *In re Hamilton*, 1 Fed. Rep. 800; *Ex parte Talcott*, 9 N. B. R. 502; *In re Baxter*, 18 N. B. R. 497; *Lewis v. United States*, 92 U. S. 618; *Evertson v. Booth*, 19 Johns. 486. English cases in chancery: *Kellock's Case*, L. R. 3 Ch. 769; *Greenwood v. Taylor*, 1 Russ. & M. 185; *Mason v. Bogg*, 2 Mylne & C. 448.

As said above, the learned counsel for the appellant does not claim that the indorser can enforce the rule contended for by him, for his own benefit, as that would be in direct conflict with the rule, which is admitted by all parties, that the holder of the note may at his option enforce his remedy against both or either debtor for the whole amount of his claim until he obtains full satisfaction therefor. See Story, Eq. Jur. § 640, and cases cited. The claim is proved in favor of the creditors of the indorser, and the counsel claims to invoke, in favor of his other creditors, the rule which

under certain circumstances will compel a creditor having security for his debt upon two or more collateral securities, in favor of a creditor of the same debtor having security on only one of such collaterals, to exhaust his remedy in the first place against the collaterals upon which the other creditor has no security. Id. §§ 633–635. But courts do not apply this rule when its enforcement will be a detriment to the party having the double security, and we do not think the rule has ever been enforced when the double security which the one creditor holds (not held by the other) is simply the personal responsibility of a third person, who is debtor for the amount of the same claim. Id. §§ 642, 643. Judge STORY says: "But although courts of equity will thus administer relief to both parties in cases of double funds which are subject to the same debt, and will in favor of sureties marshal the securities for their benefit, yet this will be so done in cases where no injustice is done to the common debtor, for then other equities may intervene. And the interposition always supposes that the parties seeking aid are creditors of the same common debtor; for if they are not they are not entitled to have the funds marshaled in order to leave a larger dividend out of one fund for those who can claim only against that. . This principle may be easily illustrated by supposing the case of a joint debt due to one creditor by two persons, and a several debt due by one of them to another creditor. In such a case, if the joint creditor obtains a judgment against the joint debtors, and the several creditor obtains a subsequent judgment against his own several debtor, a court of equity will not compel the joint creditor to resort to the funds of one of the joint debtors so as to leave the second judgment in full force against the funds of the other several debtor. At least it will not do so unless it should appear that the debt, though joint in form, ought to be paid by one of the debtors only, or there should be some other supervening equity." *Ex*

*parte Kendall*, 17 Ves. 520; *Dorr v. Shaw*, 4 Johns. Ch. 19. In the case of *Ex parte Kendall*, Lord ELDON says: "But it was never said that if I have a demand against A. and B. a creditor of B. shall compel me to go against A. without more. . . . If I have a demand against both, the creditors of B. have no right to compel me to seek payment from A., if not founded on some equity giving B. the right, for his own sake, to compel me to seek payment from A. . . . It must be established that it is just and equitable that A. ought to pay in the first instance, or there is no equity to compel a man to go against A., who has a resort to both funds."

In the case at bar, therefore, the other creditors of Meyer have no larger equities against the creditors of Meyer and the furniture company than Meyer himself has or would have if he were prosecuting this appeal.

It is admitted that if the debtors, Meyer and the furniture company, were not insolvent, or if they had not made assignments, the common creditor might prosecute his claim against either or both to judgment and satisfaction, and that a court of equity would not interfere to prevent such a result. Certainly it would not interfere to prevent a satisfaction of the entire claim if either or both parties had sufficient assets to satisfy the same. Why, then, should a court of equity interfere to prevent the satisfaction of the common creditor's debt out of the estates of his debtors in the hands of their respective assignees, if the dividends upon the whole amount of such claim proved against each estate will produce such satisfaction? or why is his debt against the indorser any less sacred than the claim against the maker? It may have been, and in the case at bar it is probable, that the common creditor relied fully as much upon the credit of the indorser as he did upon that of the furniture company when discounting the notes which constitute his claim. Why, then, should a court of equity in-

In re Meyer.

terfere in a way which would result in giving the common creditor less than his proportionate share of both estates upon the basis of a debt due from each insolvent to the full amount of his claim? Under the rule contended for by the learned counsel for the appellant, if each estate would pay a dividend upon all the debts proved against it of fifty per cent., the common creditor would get but seventy-five cents on the dollar, and if the rule established by the circuit court prevails he would get his pay in full.

But the learned counsel for the appellant asks why a party should have a dividend upon money he has in his own pocket. The answer which is given to this, in most of the cases, is that the sums upon which the parties are entitled to dividends are the sums due them from the estate at the time of their making the proofs of their claims. It cannot be said that the money he afterwards receives from the estate of the maker is money paid to him on his claim against the indorser, so as to affect his right to a dividend upon the full amount due from the indorser at the time he proved his claim against him, so long as a dividend upon his full claim against the estate of the indorser, added to the dividend from the estate of the maker, will not more than pay his debt in full. When the indorser became insolvent, the claim of the holder of the note against him for the whole amount due thereon was just as legal and equitable as that of the sole creditor of such indorser; and it would seem inequitable that he should not be able to share equally in that estate upon the basis of his entire claim, because he has sought to recover a part of the same from the maker. So long as all the dividends in both estates do not more than pay his debt, to apply the money so received from the estate of the maker would work a benefit to the other creditors of the indorser and an injury to the common creditor.

It would seem to be imposing too great a task upon us

to cite the multitude of cases in which the rule of the court below has been acted upon, and vindicate their reason and logic by quotations from their decisions, and we content ourselves with saying that in our judgment the rule is neither inequitable nor unjust, and if some of the reasons, in some of the multitude of cases holding to the rule, are not sound or logical, we think there are abundant reasons which are sound and logical sustaining the rule.

The rule adopted by the learned circuit judge seems to be in exact accord with the rule in cases of bankruptcy in England, in all cases in which the creditor has only the personal promise of his several debtors for his security. Archbold, an eminent law writer, says: " As at law, the holder of a bill may, upon due notice of dishonor, sue concurrently and recover judgment for the full amount, and levy execution from every party to the bill till he have recovered the sum due on the bill. So, in bankruptcy, he may prove against every party, if they are all bankrupts, or prove against those of them who are bankrupts, and bring actions against the others, provided that, on the whole, he do not receive more than twenty shillings on the pound upon the whole amount of the bill; but if any part of the bill has been received by the holder before he has actually proved it upon the estate of a party, he can prove only for the residue, and where a bill has been proved or claimed on another's estate, and a dividend reserved on such proof or claim, though not paid, it must be deducted." 1 Archb. Bankr. (by Griffith & Holmes), p. 608, ch. 10, sec. 4.

The dividends spoken of in the last part of the quotation are evidently dividends which have been declared and reserved on the other estate before the proofs are made by the holder against the other bankrupt estate. In such case, the dividend having been declared and reserved for the benefit of the holder, it is equivalent to a part payment of the original debt, and the owner of the debt cannot con-

In re Meyer.

sistently or truthfully claim that his debt has not been re-
duced by the amount of such dividend. At the time the
proof of claim is made, if the whole debt be due and unpaid,
it is the right of the party to present and prove his claim
against both the estate of the maker and indorser for the
whole debt, and he is entitled to claim that his debt shall
share equally in the assets of each debtor in the proportion
which his claim bears to all the other claims against the
several estates; and a court of equity will not defeat the
just claim of the holder of the note by the application of
the dividends which may afterwards be awarded to him on
the estate of the maker, so as to prevent him from obtain-
ing his equal and just share of the estate of the indorser,
unless the dividends awarded in both estates shall exceed
the whole amount of his demand; and in that case a court
of equity would probably limit the right of the holder
against the estate of the indorser to an amount which,
added to the dividends against the estate of the maker,
would pay the whole of his demands. Such a course would
be equitable, and would work no injury to the holder of
the note.

*By the Court.*— The orders appealed from are affirmed
in each case, and the cases are remanded for further pro-
ceedings.

See note to this case in 11 L. R. A. 841.— REP.