BENJAMIN S. LEVY *et al.*

*v.*

THE CHICAGO NATIONAL BANK.

*Filed at Ottawa October 11, 1895.*

1. INSOLVENCY—*interest of a creditor in assigned estate—assent.* A creditor acquires no vested interest in the assigned estate of an insolvent, under the Assignment law of Illinois, until his assent to the assignment is signified by proving up his claim.

2. SAME—*rights of secured creditor—application of proceeds of collaterals.* A secured creditor of one who becomes insolvent is entitled to prove his claim and to participate in dividends only for the amount remaining after deducting sums realized upon collaterals up to the date of filing his claim and making the preliminary proofs, and not upon the claim as it exists at the date of the assignment.

3. SAME—*payment upon collaterals same day creditor files claim— effect.* A payment made upon such collaterals on the day the claim was filed should not, in the absence of controlling proof, be deducted from the amount of such claim, as acts done the same day are regarded in law as done at the same time.

4. EVIDENCE—*burden of proof as to payments upon claims.* A party excepting to a claim filed in insolvency proceedings has the burden of showing what payments have been made thereon.

5. APPEALS AND ERRORS—*appeal from county court in insolvency matter lies to Appellate Court.* An appeal from the county court upon the question of the amount for which a claim against an insolvent estate should be allowed is properly taken to the Appellate Court. *Union Trust Co.* v. *Trumbull,* 137 Ill. 146, and *Heinzelman Bros.* v. *Schrader,* 150 id. 227, followed.

*Levy* v. *Chicago Nat. Bank,* 57 Ill. App. 143, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. FRANK SCALES, Judge, presiding.

Herman Schaffner & Co., by A. G. Becker, the surviving partner, made an assignment June 3, 1893. Their indebtedness exceeded at that time $2,000,000. Their assets were such that up to the present time a ten per cent

dividend has been declared, and the prospects for more than a five per cent additional dividend are exceedingly slight. At the date of the assignment the insolvents were indebted to the Chicago National Bank in the sum of $100,000. The bank held as collateral security to this indebtedness certain promissory notes of the customers of Herman Schaffner & Co. owned by the insolvents, and pledged by them to the bank in accordance with the contract embodied in the collateral notes. These collateral notes had been partially paid. Prior to September 9, 1893,—the day on which the Chicago National Bank filed its claim against the estate of Herman Schaffner & Co.,— it had collected upon these collaterals $66,012.88. On September 9 (but whether before or after the filing of its claim does not appear) it collected $5000, and at the time of the hearing of this cause in the county court it had collected in all $90,000.38. The court allowed the bank to participate in the dividends on the basis of its claim as it stood on the day of assignment. Appellants, creditors of the estate who had filed objections in due time, insisted that the claim should be allowed only for the balance due at the date of the hearing, after deducting all sums collected on the collaterals prior thereto. The order or judgment of the county court has been affirmed by the Appellate Court.

HOFHEIMER, ZEISLER & MACK, for appellants:

The only Illinois cases which we have found bearing in any way on this question are the following: *In the matter of Bates*, 118 Ill. 524; *Shaw* v. *Coal Co.* 147 id. 526; *Furness* v. *Bank*, id. 570; *Merchants' Loan and Trust Co.* v. *Bank*, 27 Ill. App. 154; *Commercial Nat. Bank* v. *Bank*, 53 id. 358; *First Nat. Bank* v. *Bank*, 151 Ill. 308; *O'Donnell* v. *Steel Co.* 53 Ill. App. 314.

Aside from the line of Illinois decisions, which, as we have endeavored to show, support our position, the only

cases touching this subject which we have been able to find are: *In re Meyer*, 78 Wis. 615; *Midgeley* v. *Slocomb*, 32 How. Pr. 423; *West* v. *Bank*, 19 Vt. 403; *Morton* v. *Caldwell*, 3 Strob. Eq. 162, (expressly overruled in *Wheat* v. *Dingle*, 32 S. C. 473); *Bank* v. *Lanahan*, 66 Md. 461; *Bank* v. *Armstrong*, 59 Fed. Rep. 372.

JULIAN W. MACK, also for appellants.

TATHAM & WEBSTER, for appellee:

Appellee, though a secured creditor, took, under the deed of assignment, a like proportionate part of the estate. *People* v. *Remington*, 54 Hun, 505; *Bank* v. *Armstrong*, 59 Fed. Rep. 378.

It will not escape this court's attention that the distinction between an action against the debtor and the proof of claim against the insolvent estate, "for the purposes of a dividend," was clearly recognized in *People* v. *Remington, supra.*

The rule contended for by appellants violates one of the elementary and plain principles applicable to pledges, namely, that the pledgee is entitled to the full value of the entire security which he holds, until the debt is paid in full.    18 Am. & Eng. Ency. of Law, 723.

It must be remembered that appellee's debt of $100,000 was a single, entire and integral obligation, and therefore the rule adopted by the Supreme Court in the *Peoria Bank case*, 151 Ill. 308, has no application.

The doctrine of Jones on Pledges (sec. 587) is based wholly on *Midgeley* v. *Slocomb*, 32 How. Pr. 423, which is not followed by the later New York cases. *People* v. *Remington, supra; Matter of Ives*, 25 Abb. N. C. 63; *Jervis* v. *Smith*, 7 Abb. Pr. 217.

A waiver is the intentional relinquishment of a known right, and there must be both knowledge of the existence of the right and an intention to relinquish it. *Perin* v. *Parker*, 126 Ill. 206.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

When appellee filed its claim on September 9, 1893, against the assigned estate in the county court, there had been paid upon the notes, which had been pledged to it as collateral security for its debt, the sum of $66,012.88. This sum consisted of various amounts paid by the makers of the collateral notes at different times between June 3, 1893, the date of the assignment, and September 9, 1893, the date of the filing of the claim. Certificates of deposit for the respective sums so paid were issued by appellee to the order of its cashier, and by him deposited in an envelope in lieu of the notes paid, for the purpose of keeping a record of such payments. None of these collections were endorsed on the principal note of the insolvents, Herman Schaffner & Co., or entered on the books of appellee to the credit of the insolvents. But appellee received the money so paid to it, and mingled it with its own funds, and, so, had the use and benefit of it. In addition to this, the principal indebtedness was overdue at the date of the assignment. Such principal indebtedness was evidenced by a note for $100,000.00 dated April 15, 1893, payable on demand to the order of appellee, bearing interest at the rate of six per cent per annum, and signed by Herman Schaffner & Co. This note recited, that there had been delivered to appellee to secure its payment certain collaterals in the shape of notes, etc., and provided that appellee or its assigns might, at any time, after the maturity of the note, sell such collaterals or any part thereof at public or private sale, with or without notice, and apply the proceeds upon the note.

Nothing had been paid upon the notes held as collateral when the assignment was made, but appellee had then, and before that time, the right to sell the collaterals and apply the proceeds upon the note for $100,000.00. If,

instead of selling the collaterals, it voluntarily received payments upon them from the makers of them, it is difficult to see why it was not their duty to apply such payments upon the principal note. The amount of their claim on September 9, 1893, would then have been the difference between $100,000.00 and $66,012.88, or $33,987.12, instead of the sum of $100,000.00, for which their claim was filed on that day.

The general rule is, that a creditor should credit upon the principal debt whatever he may collect upon the collateral security. (Jones on Pledges, sec. 678). A pledgee, who holds commercial paper as collateral security for the payment of his debt, has no authority, in the absence of a special power for that purpose, to sell the securities upon default of payment at public or private sale. He is bound to hold and collect the same as they become due, and apply the net proceeds to the payment of the debt so secured. (*Joliet Iron and Steel Co.* v. *Scioto Fire Brick Co.* 82 Ill. 548; *Union Trust Co.* v. *Rigdon,* 93 id. 458; Schouler on Bail. & Cor.—2d ed.—secs. 206, 236). It is true, that, here, a special power was given to sell the collateral notes at public or private sale, but, as that power was not exercised, the duty of applying the money collected from the collaterals to the payment of the principal debt arose out of the fact of the pledge of the commercial paper, independently of the power. Under such circumstances, when payments are made on the notes held as collateral, the law makes the application of such payments to the principal debt, even if the creditor himself does not do so. (*Hunt* v. *Nevers,* 15 Pick. 500).

Where a creditor, holding collateral security, files his claim in the county court against the estate of an insolvent who has made an assignment, or in the probate court against the estate of a deceased insolvent debtor, he should credit upon his claim such payments as have been received by him upon his collaterals up to the time of filing proof of his claim, or filing and proving his claim.

By "proof" is meant the preliminary proofs which accompany the presentation of the claim, and not the additional proofs made necessary by the filing of objections or exceptions. The amount of the claim, as thus filed by the creditor and supported by his oath or affidavit, is the amount upon which the creditor is entitled to receive dividends from the insolvent estate irrespective of what may be collected from the collaterals thereafter. Such was the decision of this court in *Furness* v. *Union Nat. Bank*, 147 Ill. 570. In that case we said (p. 573): "The creditor has a right to prosecute his claim for the full amount against the estate of the deceased debtor in the hands of the administrator, as he had a right to prosecute it for the full amount against the debtor when alive. Of course, this right is subject to the condition that the whole amount of his claim is due to him when he files and proves it. If he has realized upon his collateral before filing and proving his claim, he voluntarily parts with the double right secured to him by the law, and can only proceed for what is actually due to him, that is to say, for what remains of his claim after deducting the amount realized from the collateral. * * * But if a creditor, who has filed and proved his claim for the full amount in the probate court, can only be allowed the difference between such amount and the sum thereafter realized by disposing of his collaterals, there will be a temptation to prolong the litigation and delay the allowance in order that he may be forced to dispose of his collaterals, so that the dividends coming to him may be calculated upon a reduced claim. By such a course of proceeding the secured creditor may be deprived of his right, under the law, to proceed both against the estate and the security until he gets payment in full."

The Assignment act requires the assignee to give notice of the assignment by publication, and to notify the creditors by mail "to present their claims under oath or affirmation to him within three months," etc. At the

expiration of three months from the time of first publishing notice, he shall report and file with the clerk of the county court a sworn list "of all such creditors of the assignor * * * as shall have claimed to be such, with a true statement of their respective claims." "Any person interested as creditor or otherwise" may appear within thirty days after filing such report, and file with said clerk "any exceptions to the claim or demand of any creditor's exhibit as aforesaid." The clerk is required to give notice thereof to the creditor, and the court shall proceed to hear the proofs and render judgment. (1 Starr & Cur. Stat. pp. 1304, 1305).

It is manifest from the foregoing provisions, that the exceptions are to be filed to the claim as presented under oath to the assignee and reported by him. The question is, whether the amount so claimed is due at the time when the claim is presented and sworn to. The trial is not merely a trial between the creditor and the debtor, but between the claimant and any other creditor or interested party as to the amount to be allowed as a basis for the calculation of dividends. This necessarily follows from the fact that any person interested as creditor, or otherwise, may except. If the trial should disclose, that the claim as presented and sworn to was unjust as between the creditor and his insolvent debtor either wholly or in part, then of course it would be either wholly or partially disallowed. But as to collections realized upon collaterals securing it after its original presentation under oath, there should be no reduction thereof from it, for the reason, among other reasons, that other creditors or interested parties would file exceptions for the mere purpose of delay, and so as to secure reductions by crediting collections made from collaterals during the delay.

Somewhat similar provisions are set forth in the Administration act (Rev. Stat. Ill. chap. 3, sec. 60,) in regard to the proof of claims against the estates of deceased debtors, where, when the claimant produces his claim in

writing and swears to its correctness, it will be allowed by the court if no objection is made, but if objection is made by the administrator, widow, heirs "or others interested in said estate," other evidence must be produced before allowance.

There is a conflict among the authorities as to the time when payments on collateral securities, or money realized from collateral securities, should be applied so as to operate as a reduction of a claim on which dividends are to be paid. The relation of debt and credit for the purpose of distribution is fixed by the decisions at three different periods respectively: *first,* the time of making the assignment, or adjudication of bankruptcy, or death of the insolvent; *second,* time of filing proof of claim; *third,* time of dividend or distribution.

The precise question here involved did not arise and was not considered in the case of *In re Bates,* 118 Ill. 524. In that case a creditor holding notes, secured by a mortgage executed by the debtor upon his own property, filed her notes as a claim in the county court against the insolvent estate of the debtor who had made an assignment for the benefit of creditors. The claim, as evidenced by the notes, was reported by the assignee, and no exceptions were filed to it. Nothing had been realized upon the mortgage security when the claim was filed and proved. The question there was, whether the creditor was entitled to a dividend upon the whole amount of her claim as filed and proved, or whether the value of the mortgage security should be deducted from the amount of the claim, and the dividend should be allowed upon the difference only; and it was held, that the creditor was entitled to a dividend upon the claim in full without deducting the value of the security. In other words, the *Bates case* declined to follow the rule known as the Bankruptcy rule. That rule requires the creditor to give up his security, in order to be entitled to prove his whole debt, or, if he retains it, to prove only for the balance of

the debt after deducting the value of the security held. This rule has its foundation in statutory enactments. It has not been uniformly applied in distributions under general assignments, or under State insolvent laws. The preponderance of authority is in favor of the view, that the creditor has the right to prove and have dividends upon his entire debt irrespective of the collateral security; and, as an authority for this general view, the doctrine of the *Bates case* has been endorsed in the following cases: *People* v. *Remington*, 121 N. Y. 328; *In re Meyer*, 78 Wis. 615; *Allen* v. *Danielson*, 15 R. I. 480; *Chemical Nat. Bank* v. *Armstrong*, 59 Fed. Rep. 372; *Todd* v. *Kentucky Union Land Co.* 57 Fed. Rep. 47; *People* v. *Remington*, 54 Hun, 505. (See also *Lewis, Trustee* v. *United States*, 92 U. S. 618; Bishop on Insolvent Debtors, sec. 427). But the question still remains, whether the entire debt, upon which the dividend may be declared, is the debt as it exists at the date of the assignment, or at the time of filing proof of the claim, or at the time of distribution.

The theory, that the creditor is only entitled to share *pro rata* upon his debt as it exists at the time of distribution, requires his claim to be reduced by the collections realized from his collaterals before the declaration of each dividend, and after his claim has been proved and allowed. This seems to be the rule in Maryland, but is not generally accepted as correct. We are not inclined to adopt it. It is not contended for, as we understand it, by either counsel in the case at bar. It is opposed to the decision in *Furness* v. *Union Nat. Bank, supra.* Its enforcement would require a re-adjustment of the basis of distribution at the time of declaring each dividend, whereas there should be a fixed sum as a basis for representation in the declaration of dividends, and as a measure of the creditor's right and interest in the assets of the insolvent estate.

The theory, that the creditor is entitled to dividends upon his claim as it exists at the date of the assignment

without reference to collections on collaterals thereafter, is founded on the doctrine that, by the deed of assignment, each creditor is an equitable owner in the assigned estate to the extent of the claim held by him when the assignment is made. But, under recent decisions of this court construing the Assignment act of this State, it can not be said that each creditor acquires a fixed equitable ownership in the assigned estate at the time of the assignment. If such were the fact, such interest could not be taken away from him by an act of the legislature. A legislative enactment, which transfers the property of one man to another without his consent, is not a constitutional exercise of legislative power, because, if effectual, it operates to deprive a man of his property without "due process of law." (*Davidson* v. *New Orleans,* 96 U. S. 97; *Taylor* v. *Porter,* 4 Hill, 140; *Rohn* v. *Harris,* 130 Ill. 525; *Ervine's Appeal,* 16 Pa. St. 256; *Hoke* v. *Henderson,* 4 Dev. 1).

But the case of *Howe* v. *Warren,* 154 Ill. 227, holds that, under section 15 of the Assignment act, the assignment may be revoked by the assent of a majority in number and amount of the creditors, who may have proved their claims in accordance with the provisions of the act, irrespective of the wishes of the minority; and that the effect of the discontinuance provided for by that section is to destroy the trust upon which the property was held. This being so, each creditor does not have a fixed ownership in the assigned estate at the date of the assignment; and the reason for fixing upon the amount of the claim, held by him at that date, as the basis for the distribution of dividends, is without force in this State, however it may be elsewhere.

The provisions of the Assignment act would seem to lead to the conclusion, that the revocable interest of each creditor in the assigned estate only vests in him when he signifies his assent to the assignment by filing his claim with the assignee. (*Gibson* v. *Rees,* 50 Ill. 383; 2 Pomeroy's Eq. Jur. sec. 994; 2 Lewin on Trusts, 515). This appears

from the provisions requiring the creditor to present his claim within a specified time, and from the further provision, that creditors, who do not exhibit their claims within three months from the publication of the notice, shall not participate in the dividends until after the payment in full of all claims presented within said time and allowed by the court. (1 Starr & Cur. Stat. page 1306, sec. 10). The object of the latter provision is to fix a time at which the estate of the assignor shall be placed in process of final settlement, and after which distributions may be made without risk of uncertainty arising from the allowance of subsequently presented claims. The reason of the provision is the same as that requiring creditors of deceased persons to exhibit claims within two years after the grant of letters of administration. (*Suppiger* v. *Seybt*, 23 Ill. App. 468).

Whatever may be the fact in other jurisdictions, it cannot be known here, whether the creditor intends to participate in the distribution of the assets of the assigned estate under the orders of the county court until he manifests his assent by filing his claim under oath. As his interest in the estate cannot be said to accrue until he does so file his claim, it is the amount of his claim at that date, which should be taken as the basis of representation in future dividends irrespective of collections from collateral securities after that date.

The learned judge, who wrote the exhaustive opinion in *Chemical Nat. Bank* v. *Armstrong, supra,* states that there is no logical basis for any distinction between the effect of collections made from collaterals after insolvency and before filing proof, and of those made after filing proof. We are unable to concur in the view that there is no logical basis for such distinction. Even in the *Armstrong case,* the opinion, after stating that the great weight of authority in England and in this country is strongly opposed to the view that a creditor with collaterals shall be thereby deprived of the right to prove for his full

claim against an insolvent estate, and after referring to numerous authorities sustaining such view, says: "The exact point, which is common to all the foregoing authorities, and which they all sustain, is that a creditor who has proved his claim against an insolvent estate under administration, can collect his dividends without any deduction from his claim as proven for collections made from collaterals after his proof of claim is filed;" and, after expressing the view, which, for the reasons already stated, can not prevail in this State, that such dividends should be made upon the claim as it exists at the date of the assignment subject always to the limitation, that the amount to be received from all sources shall not exceed the original debt and interest, the opinion further proceeds as follows: "The cases we have already cited fully confirm the foregoing view as to credits after the filing of the proof of claim;" that is to say, that no collections made from collaterals after the filing of the proof of claim shall be applied to reduce the amount of the claim as so filed.    This we regard as the correct rule; and it is sustained by the English authorities.

In *Kellock's case,* 3 L. R. Ch. App. 769, the court of chancery appeals adopted the rule, that collections on collaterals before filing proofs of claim in proceedings to wind up an insolvent company should be deducted, but that subsequent collections should not be deducted.    In that case Lord Justice WOOD said:    "There remains the question as to the time with reference to which the amount provable is to be ascertained; and as to this there is a little more difficulty.    I think, however, that the true rule is, that the debt is to be taken as it stands at the time when the claim is put in.    *    *    *    Where the demand of the creditor was large, and the securities held by him considerable, the official liquidator might dispute the claim for the very purpose of obliging the creditor to realize some of his securities before the time for making his affidavit arrived.    *    *    *    It appears to

me, that it would be leaving a great deal too much to the caprice or arbitrary discretion of the liquidator, if we were to fix upon any time except the time when the claim, which is to be adjudicated upon, was sent in." In the same case Lord Justice SELWYN also said: "I think, therefore, that the balance of convenience and inconvenience inclines strongly to the view which my learned brother has expressed, which is, that the debt is to be taken as it stood when the creditor sent in his claim."

In *In re Barned's Banking Co. Forwood's Claim*, 5 L. R. Ch. App. 18, it was held, *first*, that the rule in bankruptcy as to proof by secured creditors does not apply in the winding up of insolvent estates, but that the rule, that a creditor holding security may, if he chooses, prove for the whole of his debt, and retain his security, does apply; *second*, that the time when the claim is put in is the date after which the creditor may realize his security, and not be bound to give credit for the proceeds of the realization. It was also there held, that the putting in of the claim in winding-up cases is "equivalent to the proof against a testator's estate where an affidavit is made." To the same effect is *Bank of England Claim*, 39 L. J. Eq. (N. S.) 759.

In *Eastman* v. *Bank of Montreal*, 10 Ontario, 79, after approving of the rule in chancery, that the creditor is entitled to prove for the whole amount of his debt and to take a dividend upon the whole without prejudice to his rights against securities he may hold, and after stating that "to hold otherwise would be virtually to deprive the secured creditor of any advantage from his security," the court adopts the rule in *Kellock's case* as above stated, and says: "The state of the accounts at the time the claim is put in is that which forms the basis of the dividend sheet. * * * Any moneys received prior to that from collaterals are to be credited; those received after that from such sources need not be taken into account, unless they, with the dividend, as to that part of the claim to which

such securities are referable, bring up the amount received by the creditor to 100 cents on the dollar."

In *Fottrell* v. *Kavanagh*, 10 Irish Rep. (Eq. series) 256, the doctrine and the rule are thus clearly stated by the vice-chancellor: "The question * * * is, whether the plaintiff, who is a mortgagee of certain lands of the deceased whose assets are under administration, can be admitted to prove as a creditor against the general assets on foot of his mortgages, and to be paid ratably with the other creditors upon the full amount of his debt; or whether he must first realize as much as he can out of the premises comprised in his mortgages, and claim only upon the balance then remaining unpaid. It is the right of a mortgagee in this court (court of chancery) to proceed for the recovery of his debt upon all, or one or more of his securities, and either simultaneously, or in any order he thinks fit. * * * Accordingly, it is now settled that the rule in bankruptcy does not prevail in this court, and that a mortgagee may prove in an administration suit, or a proceeding for winding-up under the Companies' acts, for the full amount of his debt, realize what he can in any such proceeding, and afterwards resort to the premises mortgaged to him to obtain payment of any deficiency. * * * I shall therefore rule that the plaintiff is entitled to prove his claim for the full amount against the general assets without being bound first to realize his mortgage securities. The time, at which the plaintiff's debt is to be ascertained, is, as settled by *Kellock's case*, that at which his claim was brought in under the posting for creditors. I shall therefore direct that the amount due to the plaintiff be ascertained as of that date, and in doing so he must be charged with all sums theretofore received by him whether out of the mortgaged premises or otherwise, but not with any sums subsequently received. On this sum he will be entitled to a ratable dividend, the estate being insolvent." To the same effect are *Ex parte Wildman*, 1 Atk. 109; *In re Hamil-*

*ton,* 1 Fed. Rep. 800; *Sohier* v. *Loring,* 6 Cush. 537; *In re Hicks,* 19 N. B. 299; *In re Meyer, supra.*

Our conclusion is, that the amount, upon which the secured creditor is entitled to receive dividends from the assets of the insolvent estate, is the amount actually due to the creditor when he files his proof of claim, or presents his claim under oath; that the subsequent hearing upon objections or exceptions should be directed to the inquiry as to what was due at that date; that the amount due at that date is to be ascertained by the deduction from the principal debt of all payments made before that date, whether realized from collaterals, or otherwise, but that amounts realized from collaterals after that date are not to be deducted, subject always to the qualification that the dividends received from the general assets, and the amounts realized from the collateral security, shall not together exceed the amount due the creditor upon his claim.

It follows, that the county court erred in not deducting from appellee's claim the amounts collected from the collateral notes prior to the day on which the proof of claim was filed, to-wit: September 9, 1893. We are, however, unable to concur in the contention of appellants, that payments collected upon the collateral notes after that date should be deducted in fixing the allowance to be awarded to appellee as a basis for the declaration of dividends.

In regard to the payment made on September 9, 1893, the burden of proof was upon the party excepting to the claim as filed to show what payments were made, as the fact of payment is matter of defense. Although the law will look into the fractions of a day when it becomes important to the ends of justice to do so, or in order to decide upon conflicting interests, yet the general rule is, that the law knows no fractions of a day. (*Grosvenor* v. *Magill,* 37 Ill. 239). The effect is to render a day a sort of indivisible point, so that any act done in the compass of

it is no more referable to any one portion of it than to any other portion of it; and where two acts are done upon the same day they will, as a general thing, be regarded in law as done at the same time. It follows, that, where a case turns on the question as to which of two things was done first, the party having the burden of proof fails in merely showing that both were done on the same day. (5 Am. & Eng. Ency. of Law, pp. 89-91, and cases in notes). Hence, the appellant has not shown that the payment made on September 9, 1893, was made before the filing of the proof of claim on that day, and, consequently, such payment should not be deducted.

A motion is made by appellee to dismiss the appeal. The motion is overruled. The appeal was properly taken from the county court to the Appellate Court upon the authority of *Union Trust Co.* v. *Trumbull*, 137 Ill. 146, and *Heinzelman Bros.* v. *Schrader, Assignee*, 150 id. 227.

The judgments of the Appellate Court and the county court are reversed, and the cause is remanded to the latter court for further proceedings in accordance with the views herein expressed.          *Reversed and remanded.*