In re SWIFT et al.

(District Court, D. Massachusetts. January 7, 1901.)

No. 2,745.

1. BILLS AND NOTES—INDORSER—WAIVER OF PRESENTMENT AND NOTICE.

The negotiable instrument law of Massachusetts (Laws 1898, c. 533) provides that presentment for payment shall be necessary to charge an indorser, except as therein otherwise provided. Section 82 provides that presentment is dispensed with "(3) by waiver of presentment, express or implied." By section 115 notice of dishonor is not required "where the indorser is the person to whom the instrument is presented for payment." In decisions made before the act was passed the supreme court of the state had declared that any words or acts of an indorser of a note, which in fact misled and put the holder off his guard and reasonably induced him to omit due presentment and notice of nonpayment, would constitute an implied waiver thereof. A firm gave a note, which was indorsed by one of the partners. Shortly before its maturity the indorser consulted with the holder with reference to the making of an assignment by the firm and the partners for the benefit of creditors, stating their insolvency, and that neither he nor the firm would be able to pay the note at maturity, and, as a result of the conference, such an assignment was made before the date of the maturity of the note. *Held* that, under the statute as well as by the law merchant, there was an implied waiver of presentment, which also excused notice to the indorser of nonpayment, under section 115 of the statute; the indorser being the person to whom the note would have been presented but for the waiver, and the case being fairly within the intent and meaning of such provision.

2. BANKRUPTCY—PROOF OF NOTE AGAINST ESTATES OF MAKER AND INDORSER.

Under Bankr. Act 1898, § 65c, which provides that, where the claim of a creditor is proved and allowed after a dividend has been declared, it shall not affect such dividend, but he shall be paid equal dividends, if the estate equals so much, before other creditors are paid any further dividends, where the holder of a note made by a partnership, and indorsed by one of the partners, both maker and indorser having been adjudicated bankrupts, proves his claim against the partnership estate after a dividend has been declared and paid to other creditors, his right to a preference in future dividends cannot be considered equivalent to a dividend actually declared in his favor, or to an actual part payment of his note by the maker, and he is entitled to prove his claim against the estate of the indorser for the full amount of the note.

106 F.—5

In Bankruptcy.

The referee certified questions for the determination of the court, as follows: ·

"These were petitions to review an order denying a petition to reconsider the claim of Charles B. Burleigh, allowed against the separate estate of E. C. Hodges, and modifying the allowance of said claim. The case was submitted on a stipulation of agreed facts. The proof of this claim had been allowed on the 11th day of July, 1900, against the joint estate of said bankrupts, in the sum of $52,275, and was then entitled to the first dividend of 20 per cent., already declared on the 15th day of June, 1900, on claims allowed and such as would probably be allowed, and was subsequently allowed on July 18, 1900, against the separate estate of E. C. Hodges in the sum of $41,820; being the amount of the note and interest held by the creditor Charles B. Burleigh, less the amount of the dividend, as stated above. It was agreed that the firm of E. C. Hodges & Co. had given this note for $50,000, signed by it and indorsed by E. C. Hodges, who was a member of the firm prior to its delivery, and there was no contention that it was not provable against both the joint and separate estates if the requirements for presentment and notice had been complied with (Bankr. Act, § 5g); also that the note was payable January 3, 1900; that prior to January 3d the firm of E. C. Hodges & Co., and the various members thereof, were insolvent; and that on or about December 26, 1899, E. C. Hodges consulted with the then owner and holder of said note with reference to an assignment of the property of the firm and of said partners for the benefit of its creditors, and as a result of such conference an assignment for the benefit of creditors was executed by said firm and said Hodges prior to January 3, 1900. The subject-matter of this note was discussed· at this conference, and the inability of the firm and said E. C. Hodges to pay said note at maturity was stated by said Hodges to the holder. After said assignment, proceedings in bankruptcy were begun and a trustee was chosen of the property. In consequence of said conference, and the statements of said firm and of said Hodges, no presentment or demand for payment was made, and no notice was sent to E. C. Hodges of its nonpayment. This petition involves the construction of the Massachusetts negotiable instruments act of 1898 (chapter 533). · Section 70 of this act provides as follows: 'Presentment for payment is not necessary in order to charge the person primarily liable on the instrument, * * * but except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and endorsers.' Section 80 provides: 'Presentment for payment is not required in order to charge the endorser where the instrument was made or accepted for his accommodation, and he has no reason to expect that the instrument will be paid if presented.' Section 82 provides: 'Presentment for payment is dispensed with. * * * (3) by waiver of presentment express or implied.' Section 89 provides: 'Except as herein otherwise provided, when a negotiable instrument has been dishonored by non-acceptance or nonpayment, notice of dishonor must be given to·the drawer and to each endorser, and any drawer or endorser to whom such notice is not given is discharged.' Section 115 provides: 'Notice of dishonor is not required to be given to an endorser in either of the following cases: * * * (2) Where the endorser is the person to whom the instrument is presented for payment; (3) where the instrument was made or accepted for his accommodation.' One of the objects of presentment for payment and notice of dishonor is that the indorser may take steps to protect himself by demanding additional security. In this · case the indorser was a partner in the firm, and hence a person primarily liable on the instrument. In a certain sense, E. C. Hodges may also be said to have been an accommodation indorser, and hence, under section 80 already cited, not entitled to presentment for payment, and under the terms of the stipulation it cannot be said that he had any reason to expect that the instrument would be paid if presented. In other words, the law never requires the holder to perform a needless ceremony in order to make valid the conditional contract of an indorser. The provisions of section 115 exclude the necessity of notice of dishonor. Furthermore, it appeared to the referee that there had been an implied waiver of presentment for payment and notice of

dishonor. While the decisions cited by the petitioner clearly show that the knowledge of insolvency was no excuse for the failure to present for payment and notice of dishonor, the facts in this case were much stronger, and amounted, according to the court's view, to a waiver of these requirements upon the part of the holder of the note. Whether the Massachusetts negotiable instruments act supersedes in all respects the law merchant it does not seem to the referee necessary to determine. It is sufficient to say that under the law merchant the authorities cited by both parties make it clear that under certain circumstances presentment for payment and notice of dishonor may be dispensed with or impliedly waived. That the proof presented should be diminished to the extent of the dividend already declared and payable from the joint estate would seem to be established by the following authorities: Ex parte Nason, 70 Me. 363; In re Farnham, 6 Bost. Law Rep. 21, 26. The proof of said claim, the stipulation, petition to reconsider, and order thereon are herewith annexed and made part of this certificate, and the said questions are certified to the judge for his opinion thereon."

The following stipulation was thereafter entered into:

"It is agreed that the Burleigh note was presented to the referee for proof against the separate estate of E. C. Hodges, without the knowledge of the petitioner, for review, and that the allowance thereof by the referee was without any hearing other than is implied by presentation and allowance; that the only evidence introduced at any stage of the case consists of the stipulation filed with the referee, and annexed to the certification to this court; that E. C. Swift remained the holder of the note till after maturity, and that at least as late as a month after maturity of the note he had not assented in writing to the common-law assignment made by E. C. Hodges & Co.; and that on or about its date the letter annexed hereto was sent, with the sheets of the first dividend, to the trustee:

" 'Boston, June 15, 1900.

" 'Freedom Hutchinson, Esq., Boston—Dear Sir: In the matter of Frederick Swift et al., bankrupts. In accordance with instructions from Referee Olmstead, I inclose herewith dividend sheet in the above-entitled case, showing a first dividend of twenty per cent. upon all claims proved and allowed, upon claims on file, and upon claims suspended, with the exception of claim of one Burleigh and one Le Roy. You will kindly send out notices of this dividend to the forty-one creditors whose claims have been allowed, having same payable not earlier than ten days from date of declaration. The claims filed, but not allowed, and the claims suspended, you will hold checks until after allowance. Your commission as trustee has been figured on all claims presented, with the exception of said Burleigh and Le Roy claims. The same will also apply to the referee's commission. Kindly send me the checks to be countersigned on or before the twenty-fifth of June.

" 'Yours, respectfully,                    M. MacCarthy, A. C.' "

See 105 Fed. 493.

Bancroft G. Davis, for Foreman, an objecting creditor.
Elder, Wait & Whitman, for Burleigh.

LOWELL, District Judge. Under St. Mass. 1898, c. 533, §§ 63, 64, Hodges was an indorser of the note in question. By sections 70 and 82 of the same act, presentment for payment was necessary to charge him as indorser, "except as herein otherwise provided." The first exception relied on by the creditor is found in section 79: "Presentment for payment is not required in order to charge the drawer where he has no right to expect or require that the drawee or acceptor will pay the instrument." The appealing creditor of the joint estate contends that section 79 applies only to the drawer of a bill of exchange, and not to the indorser of a promissory note. In some cases it is said or assumed that the rights of a drawer of a bill of

exchange regarding demand and notice are the same as those of an indorser of a promissory note (see Bank v. Fulmer, 3 Pa. St. 399), but it is at least doubtful if the assumed identity governs the construction of a statute like that before the court, where the words drawer, maker, indorser, etc., appear to be used in their discriminated sense. It is not necessary to decide this point, in view of the construction put upon other sections of the act.

The second exception insisted upon is that found in section 82: "(3) By waiver of presentment, express or implied." No express waiver is here shown, and the case turns upon the existence or absence of waiver implied from the facts agreed by the parties and stated by the referee. St. Mass. 1898 is intended to supersede all other statutes relating to promissory notes, and, as it does not purport merely to rearrange statutes previously existing, there is no strong presumption that any one of its provisions is merely a codification of the law previously existing. When it attaches certain results to an implied waiver of demand, however, a court called upon to define such waiver may appropriately look at definitions of the term previously established. When the legislature of Massachusetts used the words, "waiver of presentment, express or implied," it may be supposed to have used these words in the meaning consistently attributed to them by the courts of Massachusetts. In Kent v. Warner, 12 Allen, 561, 563, Mr. Justice Foster said, in delivering the opinion of the supreme court:

"Strictly speaking, a waiver is an intentional relinquishment of a known right; but where the indorser of a note by words or acts has in fact misled and put the holder off his guard and reasonably induced him to omit due presentment for payment and notice of nonpayment, he is deemed in law to have waived the performance of these ceremonies, because it would be inconsistent with good faith on his part to insist upon a condition compliance with which had been prevented by his own conduct."

That which puts the holder off his guard is said to be waiver, in other cases, among them Gordon v. Parmelee, 15 Gray, 413, 422; Armstrong v. Chadwick, 127 Mass. 156.

Do the facts stated in the referee's certificate establish that the holder of the note was reasonably put off his guard by the acts of Hodges? I think they do. Hodges was liable on the note both as maker and indorser. About a week before maturity he consulted with the holder regarding a general assignment of the firm and its partners, which assignment was made as a result of the consultation. The note was discussed, and Hodges told the holder that neither the firm which made the note, nor he himself, the partner who had indorsed it, could pay it at maturity. It is not necessary to decide that, where the maker and indorser of a note are quite separate persons, the bare statement by the indorser that the maker will not pay operates to excuse demand. Here the maker and indorser were, in an important sense, the same person. Hodges said, in effect, "I cannot pay you this note either as maker or as indorser." Doubtless he might have added, "In spite of the fact just stated, I require you to go through the useless ceremony of demanding payment." Had he said this, there would have been no waiver; but, in the absence of such a reservation, I think that the holder reasonably un-

derstood him to waive the useless ceremony. Upon this understanding the holder acted. It should be noticed that Hodges and his creditor were not dealing at arm's length, or as opposing parties, but were conferring about the general condition of Hodges' affairs.

In construing a term found in a statute of Massachusetts, and previously defined in Massachusetts decisions, it may be sufficient to refer to those decisions. As the statute in question is intended to introduce uniformity into the laws of the several states, it would be unfortunate, however, if the Massachusetts decisions concerning waiver of demand were opposed to a great weight of authority elsewhere, and to the law merchant as generally laid down. I do not find that opposition exists. The definitions in 2 Daniel, Neg. Inst. (4th Ed.) § 1103, and in 2 Pars. Notes & B. (2d Ed.) p. 582, are similar to those declared by the supreme court of Massachusetts. In Bank v. Dill, 5 Hill, 403, no waiver of demand was understood by the creditor at the time the alleged waiver took place. It was set up as an afterthought to excuse a mistake concerning the date of the note. When the holder was asked by the indorser why the note had not been presented for payment, he answered that presentment would be made that same afternoon, and claimed a waiver only after he had found out, to his surprise, that this presentment would be too late. In Re Grant, Fed. Cas. No. 5,691, the court found that the waiver, so far as there was one, was not made with any regard to the indorsement, and that all parties were considering only the rights of the maker. In the case at bar the indorsement was expressly referred to. I hold, therefore, that there was no implied waiver of presentment, within the purview of the statute.

That waiver of presentment for payment, and knowledge of nonpayment arising from the identity of the maker and indorser, taken together, will excuse notice of nonpayment, is a conclusion so sensible that it must stand unless plainly opposed to the words of the statute. That this is the law merchant is not denied. To present for payment in order to charge an indorser, where the indorser has already told the holder that he cannot pay the note either as maker or as indorser, seems a useless ceremony, but it is a matter of substantial importance, by comparison with giving notice to the indorser who has waived presentment, that he, the indorser, has not paid the note as maker. The notice, if given, would run substantially thus: "Please take notice that you have not paid the note which, in accordance with our agreement, I have not presented to you for payment." The facts which were held to constitute a waiver of demand were held also to constitute a waiver of notice in most or all the cases above cited. Waiver of notice seems to have been implied from waiver of presentment.

That notice would be excused by waiver, even in the absence of an express provision of statute, I am inclined to think; but this case seems fairly covered by the statute itself. By section 115, notice of dishonor is not required "where the indorser is the person to whom the instrument is presented for payment." The instrument here was not presented to Hodges for payment, because he had given the creditor to understand that presentment would be useless. The excep-

tion was inserted to avoid the necessity of giving notice of a fact which, by the terms of the exception, must be within the personal knowledge of the man notified. It is no straining of language to hold that the term, "person to whom the instrument is presented for payment," includes a person to whom the instrument would have been presented if he had not, both as maker and as indorser, waived such presentment. The creditor is therefore entitled to prove against Hodges' separate estate.

The proving creditor seeks to review the decision of the referee in deducting from the amount proved against the separate estate the amount of the dividend declared on the joint estate. That a creditor may prove for the full amount of a note against both its maker and indorser, and may collect from both estates dividends on such proof until his whole debt is satisfied, is settled law. Where, however, proof against the estate of the indorser is made after part payment by the maker, the proof must be limited to the balance due on the note after deducting the part payment. And it appears to be settled that a dividend from the estate of the maker, declared in favor of the creditor, and payable before proof is made against the estate of the indorser, is the equivalent of actual part payment. In this case, proof against the estate of the maker was made after the declaration of the first dividend. By section 65c, the creditor making proof after the declaration of the first dividend is entitled to be paid "dividends equal in amount to those already received by the other creditors, if the estate equal so much before such other creditors are paid any further dividends." This right of the creditor to a preference in future dividends does not seem to me equivalent to a declaration of a dividend in his favor, or to actual part payment of the note. In re Hicks, Fed. Cas. No. 6,456; In re Hamilton (D. C.) 1 Fed. 800; In re Meyer, 78 Wis. 615, 626, 48 N. W. 55, 11 L. R. A. 841; Ex parte Todd, 2 Rose, 202, note. The estate might not be large enough to pay to this creditor the rate declared in favor of the other creditors. Considering the situation as shown in the finding of the referee and in the subsequent stipulation, I think the creditor was entitled to prove for the whole amount of the note against the estate of the indorser. The judgment of the referee is reversed, in so far as it provides for a diminution of the proof presented against the separate estate of E. C. Hodges; in other respects it is affirmed.