State Savings Loan & Trust Co. v. Stewart.

---

## State Savings Loan and Trust Co. v. James M. Stewart et al., Assignees, etc.

1. INSOLVENT ESTATES—*Distribution of Assets—Secured Creditors.*— A creditor of an insolvent, who holds collateral security, is entitled to prove his claim and to participate in dividends only upon the amount remaining after deducting whatever has been realized upon such security

up to the time of filing his claim and making the preliminary proofs, and not upon the claim as it exists at the date of the assignment.

2. SATISFACTION —*For a Less Sum than the Amount Due.*—An acceptance of a less sum than the amount due by a creditor, in satisfaction, or an agreement to take a less sum in satisfaction, is, in the first case, a discharge of only so much of the debt, and in the latter case the promise is void for want of a consideration.

3. CORPORATIONS—*Implied Powers of Officers.*—The president of a savings loan and trust company has no authority as such, implied from his official relation to the company, to release or discharge a debt due to such company upon the payment of a part only.

4. ESTOPPEL—*By Unauthorized Acts of Officers of Corporations.*—An unauthorized act by an officer of a corporation and void for want of a consideration, can not operate as an estoppel upon the corporation.

**Proceedings,** under the act relating to assignment, for the benefit of creditors. Appeal from the County Court of Fulton County; the Hon. SAMUEL H. ARMSTRONG, Judge, presiding. Heard in this court at the November term, 1895. Reversed and remanded with directions. Opinion filed May 29, 1896.

W. L. VANDEVENTER and S. B. MONTGOMERY, attorneys for appellant, contended that appellant had a legal right to have a dividend upon the total amount of its claim *as presented and allowed*, without any deduction on account of moneys collected on collaterals *after* that time. In re Bates, 118 Ill. 524; Yates v. Dodge, 123 Ill. 50; Mechanics' L. & Trust Co. v. Am. Ex. Bank, 27 Ill. App. 154; Furnace v. Union National Bank, 147 Ill. 570; Shaw et al. v. Lady Ensley Coal Co., 147 Ill. 533; First Nat. Bank of Peoria v. Com. Nat. Bank, 151 Ill. 308.

The president of a banking institution has no implied or *ex officio* power or authority to release or discharge without payment any indebtedness or demand due the corporation. 4 Thompson on Corp., Sec. 4622; Brouwer v. Appleby, 1 Sandf. (N. Y.) 158; Spyker v. North River Ins. Co., 7 Cow. 462; First National Bank v. Bennett, 33 Mich. 520; Titus v. Cairo, etc., Ry. Co., 37 N. J. L. 98; Western R. Co. v. Bayne, 11 Hun (N. Y.) 166; Hodge v. First National Bank, 22 Gratt. (Va.) 51; Mast Buggy Co. v. Litchfield Implement Co., 55 Ill. App. 99.

In the absence of special power bestowed on the presi-

dent he has, *ex officio*, "no more control over the corporate property and funds than any other director. The affairs of corporate bodies are within the exclusive control of their boards of directors, from whom authority to dispose of their assets must be derived." 1 Morawetz on Corp., Sec. 537.

The president of a bank can not render a bank liable for a special deposit received by him in violation of the bank's rules. Foster v. Essex Bank, 17 Mass. 4699, Am. Dec. 168; Thompson on Corporations, page 3443, *et seq.;* Morse on Banking, Sec. 144 b; Gibson v. Goldthwaite, 7 Ala. 281; 42 Am. Dec. 592; Hallowell et al. v. Hamlin, 14 Mass. 180.

A party may be perfectly willing to remit a part of his claim, even in consideration of payment of the residue, and then repent and recover the part remitted. Curtis v. Martin, 20 Ill. 557; 2 Parsons on Contracts (5th Ed.), 618; Neal v. Handley, 116 Ill. 418; Cumber v. Wane, 1 Smith Lead. Cases, 555 and note.

Unless the element of fraud—either actual or constructive—enters into the alleged transaction, there is no estoppel whatever. There must be a fraudulent purpose and result. Powell v. Rogers, 105 Ill. 318; Chandler v. White, 84 Ill. 435; Davidson v. Young, 38 Ill. 145; Gillett v. Wiley, 126 Ill. 312.

A party is not estopped where he has been guilty of no fraud, although he acted under a clear misapprehension of law. Halcomb v. Boynton, 151 Ill. 294.

JOHN A. GRAY, attorney for appellees.

As a matter of law, when legal counsel can be readily procured, the rule that ignorance of the law is always fatal knows of no exception. Beebe v. Swartwout, 3 Gil. 162; Oswald v. Sproehnle, 16 Ill. App. 368; Shafer v. Davis, 13 Ill. 396; Sibert v. McAvoy, 15 Ill. 106; Broadwell v. Broadwell, 1 Gil. 509.

A mistake in the legal meaning of words used in a deed or other contract, or the proper construction of the words employed, or as to the legal effect of those words, where no

fraud, undue influence or imposition has been used, will afford no equitable ground for a reformation of the instrument, such mistakes being one of law. It is for mistakes of fact, alone, that contracts may be reformed in equity. Fowler v. Black et al., 136 Ill. 364; Purvines et al. v. Harrison, 151 Ill. 223; Caverly v. Harper, 40 App. 96; 15 Am. & Eng. Ency. 634.

The ordinary affairs of a corporation, such as custom has imposed upon or necessity requires of the president of a corporation, may be performed by him without express authority. Chicago, B. & Q. R. Co. v. Coleman, 18 Ill. 298; Koch v. National Union Bldg. Ass'n, 35 Ill. App. 465; B. S. Green & Co. v. Blodgett, 49 Ill. App. 185.

Corporations are bound, in their ordinary affairs, by the acts and admissions of their officers relating to the business usually transacted through such officers. Lake Shore & M. S. Ry. Co. v. B. & O. & C. R. Co., 149 Ill. 289; Ryan v. Dunlap, 17 Ill. 45.

MR. PRESIDING JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

The petition, answer and stipulation filed in this cause show the following facts:

On January 5, 1894, Turner, Phelps & Co., a banking firm of Lewistown, made a general assignment for the benefit of their creditors, under the statute, to James M. Stewart and George K. Linton, the appellees, which was duly recorded, and the assignees entered upon the performance of their duties under bond properly given and filed. Notice to creditors to present their claims was given on January 24th, and on February 22d appellant, an Illinois corporation doing business at Quincy, presented its claim, verified as required by law, of $51,374.73, which was not contested and is admitted to have been *bona fide* due.

On January 9, 1895, the assignees, having in their hands for distribution $37,720.25, which was sufficient to pay a dividend of fifteen per cent on the claims presented, so reported to the County Court and asked for its order to pay

such dividend upon the claims as allowed against said estate.    The court thereupon made an order that they " proceed and pay to the creditors of said firm of Turner, Phelps & Co., fifteen per cent of the amount of their respective claims, as filed and presented with said assignees."    On March 23d, upon their verbal report that they had in hand a sufficient amount to pay a further ·dividend of ten per cent, the court made a like order for its payment.

The assignees have paid to the State Savings Loan and Trust Company, on the order for said dividend of fifteen per cent, $7,001.32, and on the order for that of ten per cent, $4,667.55.

They yet have in their hands good assets of said assignors to be applied upon the claims so presented, amounting to at least $90,000.

On July 3, 1895, appellant filed the petition herein, setting forth the facts above stated, and alleging in addition that upon said dividends of fifteen and ten per cent there should have been paid to petitioners the sums of $7,706.12, and $5,137.41, respectively, or a total of $12,843.53, but that appellees paid to it thereon only the sums of $7,001.32 and $4,667.55, or a total of $11,668.87, leaving unpaid on said dividends a balance of $1,174.66, and praying that they be ordered to pay said balance to petitioner.

Of these allegations the answer denied only one, viz., that there was any balance due and unpaid to petitioner on these dividends.    Admitting all the others, including the validity of petitioner's claim for $51,374.18, it avers that before the allowance or payment of any dividend the petitioner authorized and directed the assignees to compute its dividends upon the basis of a claim for $46,675.50, by reason of its collections made upon collaterals after the presentation of its claim.    Upon the hearing the court made an order finding for the defendants and dismissing the petition, from which this appeal was taken.

It appears that these dividends were the second and third, the first having been paid under an order of the County Court of May 14, 1894, which, so far as it relates to

appellant is as follows: "That the State Savings Loan and Trust Company have collected upon collaterals held by it the sum of $3,336.23, which should be applied on its claim filed against Turner, Phelps & Co. on account of bills payable, and the sum of $1,362.45 which should be applied on its claim against said Turner, Phelps & Co., on account of guarantee of note of H. & H. W. Phelps, and that said State Savings Loan and Trust Company consents to have said amounts applied as aforesaid upon said claims, and that dividends be allowed on balance of said claims after such application. It is therefore ordered by the court that in making such dividend the sums aforesaid be deducted from the face of the claim of the State Savings Loan and Trust Co. as a credit thereon, before such dividend."

Appellees introduced two letters to John A. Gray, their attorney, signed "Lorenzo Bull, Pres't," preceding the order above quoted. The first, dated April 23, 1894, showed the dates and amounts of collections made on collaterals, of which amounts all but $99.70 were made after appellant's claim was presented; and the other, dated April 26, 1894, contained the following: "We suppose that it is due to Turner, Phelps & Co., and the assignees, that the amount we have actually collected should be credited upon our claim against them. The sums collected from collaterals which were especially applicable to the notes of Henry W. Phelps should be so applied, and the other amounts to our other claims against Turner, Phelps & Co., and we authorize such application." Mr. Turner, one of the assignors, testified to his receipt of a similar letter from President Bull a few days before the declaration of the first dividend, and to its destruction and contents. It stated the collections of $4,698.68, and consented to their application as credits upon the claim filed. On the order of May 14th, the dividend to appellant was calculated upon the basis of their claim as reduced by the application of these credits.

Appellant introduced a letter from President Bull to appellees, of October 11, 1894, containing the following: "When we were paid our dividend in May last, we were

paid a less amount by $469.86 than was properly and legally due us, which we judge occurred entirely through misapprehension on your and our part, in this way: the amount of our claim duly filed was $51,374.18, while we were paid a dividend on but $46,675.50, you having deducted from the amount of our claim the sum of $4,698.68 which we had collected on certain collaterals. The amount of those collections, we are advised, you will be entitled to have credit for in a final settlement, but they are not entitled to be deducted from the amount upon which we should receive dividends."

On the 14th of the following month appellant filed its petition, like the one in this case, praying for an order upon appellees to pay that balance, to which they answered that the deduction complained of was made by the consent of petitioner, and the court upon the hearing denied the prayer and dismissed the petition, from which order an appeal was prayed and allowed, and an appeal bond duly approved was filed.

Appellees also introduced a letter from "Charles H. Bull, vice-president, to the assignees, of July 12, 1895, acknowledging the receipt of their check for the second dividend ($7,001.32,) and adding, "we note particularly what you say regarding the basis on which this dividend is calculated, and have no fault to find with your action, but will await the court's decision." And appellant, one of April 2, 1895, from President Bull to the assignees, acknowledging receipt of their check for the third and last dividend, and containing the following: "The check states that it is a dividend on a claim of $46,675.50, against the estate of Turner, Phelps & Co., allowed by the County Court of Fulton County, Illinois. This statement does not agree with the facts in the case, as the amount of our claim duly filed against the estate of Turner, Phelps & Co., and allowed by the court was $51,374.18. We do not wish to be prejudiced by seeming to admit that our claim against your estate is only $46,675.50. We should much prefer that you should send us a plain check for the amount that you are at present

disposed to pay, leaving the amount of dividends to which we are legally entitled to be adjusted and determined by the courts; and we will hold the check now in our hands without presentation, until we hear from you further."

All of the evidence produced on the hearing is in substance above set forth in chronological order. From which it appears that appellant's president, "supposing" that the collection on collaterals, though made after the filing and allowance of its claim, should be credited thereon and its dividends calculated on the amount thereof as so reduced, undertook, for his company, to consent to and authorize such application and calculation, before any dividend was paid or ordered to be paid; that the County Court, supposing and assuming that this was the consent of the company, made its order reciting such supposed consent as a fact without other proof, and directing such application, and payment to the appellant of ten per cent upon such reduced amount, which appellees paid; that after such payment received, but before any other dividend was declared or ordered to be paid, the president notified the assignees that the dividend had been declared ordered and paid under a misapprehension on his part and theirs as to the basis on which it should have been calculated; that the company had since been "advised" that it was legally entitled to a dividend upon the amount of its claim as presented and allowed, without deduction, for the collections thereafter made by it upon the collaterals; that appellant accordingly sought an order of the court for the payment of the balance so claimed to be due on a proper dividend; which was refused because of the supposed consent of appellant to the basis of computation complained of, as recited in the order of May 14, 1894; that from this order of refusal appellant took an appeal which, so far as appears, has not been disposed of; and that upon the payments made to it under the orders for the second and third dividends, which were upon the same basis, appellant's vice-president, as to one, and its president, as to the other, gave to appellees a like notice of its claim to the alleged deficiency and filed this petition for its enforcement.

It is contended that although the basis assumed was suggested and induced by the letter of President Bull, yet the consent he undertook to give upon a mere "supposition" as to the rule in such a case, without authority or any valid consideration, under a misapprehension of the law and injurious to appellant, should not bind it; and that the court upon the application made should have corrected the error.

We think this contention is supported by the proof and the law. The answer to appellant's petition, by relying solely upon the supposed consent, seems impliedly to admit that otherwise the basis of computation taken was wrong. It is not denied in the argument, nor indeed could it well be, in the face of repeated decisions of the Supreme Court. Besides the cases cited in the brief for appellant, we refer to only one, because it is later and leaves no room for further debate on that point. Levy v. Chicago National Bank, 158 Ill. 88. After reviewing the authorities the court say (p. 102): " Our conclusion 'is that the amount upon which the secured creditor is entitled to receive dividends from the assets of the insolvent estate, is the amount actually due to the creditor when he files his proof of claim, or presents his claim under oath; * * * that the amount due at that date is to be ascertained by the deduction from the principal debt of all payments made before that date, whether realized from collaterals or otherwise, but that amounts realized from collaterals after that date are not to be deducted, subject always to the qualification that the dividends received from the general assets, and the amounts realized from the collateral security shall not together exceed the amount due the creditor upon his claim." The rule here announced is just what the president told the assignees he had been advised it was in his letter of October 11, 1894—about three months before the dividends here in question were declared. By that rule the amounts due this creditor on those dividends was fixed, and certain or capable of being reduced to certainty by computation, and payable in money; and the payments made by appellees thereon respectively were con-

siderably less than those amounts. They were made as counsel here admit, on orders of the court persisting in the reduction of its claim, as in that of May 14th, for the first dividend and for the reason therein stated, namely the supposed consent of appellant by its president.

But " the rule is well settled, that an acceptance by the creditor of a sum less than the amount due, in satisfaction, or an agreement to take a less sum in satisfaction, is, in the first case, a discharge of only so much of the debt, and in the other case the promise is void, as without consideration." Hayes v. Mass. Life Ins. Co., 125 Ill. 626 (p. 639). In that case the settlement relied on, made by a guardian, for fifty per cent of the amount due, was held unauthorized and inoperative as to the balance, but the court say the result would not have been different if the wards had been of age, legally capable of contracting, and had themselves agreed to accept one half the amount in full satisfaction—the reason immediately following in the language above quoted. So here, had the appellant itself by its board of directors, expressed a like consent, and accepted the amount paid as in full for its dividends, it would not have barred the right to recover the balance here sought. The case cited refers to others in support of the rule. See also Martin v. White, 40 Ill. App. 281, and citations.

We therefore deem it unnecessary to discuss the question of Mr. Bull's authority implied from his official relation to appellant, but are clearly of opinion it did not extend to the release or discharge of such a debt upon payment of a part only. Morse on Banks and Banking, Ch. X, sections 144 b and 144 c.

If, then, the consent so attempted to be given was twice void for lack of authority in the giver and in itself for lack of a consideration, it could not operate by way of estoppel and thus indirectly bind appellant. It was given in good faith and a spirit of fairness, not to bind the creditor of its own force, but because he mistakenly " supposed " the law, upon the facts as known to appellees and open to inspection of all other creditors, so bound it. It misrepresented no

fact nor induced anybody to assume a different position and so be legally injured by its retraction. The payment to appellant now, of the balance that should have been paid then, can not deprive other creditors of a dollar legally or equitably due to them. Certainly it would diminish the amount from which the next dividend would be paid, which would affect appellant no less than other creditors by diminishing his dividend in the same proportion, but such effect would be wrongful to him and not rightful to them. They are all alike entitled only to the same percentage of the amount of their claims when presented and proved, and payment to each of his proper percentage, whensoever made, can not be a wrong or legal injury to any.

It is conceded that the County Court had full power to modify its order of May 14; 1894, as to the basis of computation of appellant's dividend. Its refusal of appellant's petition practically gave to this supposed consent, void in itself and distinctly retracted, the effect of a release of the balance here claimed on the second and third dividends, and for the reasons stated we think it was error. The order will therefore be reversed and the cause remanded with directions to make the order as prayed for. Reversed and remanded with directions.